BROWN, Appellant, v. BROWN, Respondent.

(197 N. W. 153.)

(File Nos. 5297, 5298.   Opinion filed January 28, 1924.)

1.  **Divorce—Appeal and Error—On Appeal in Divorce Action, Court Considers Competent Testimony Only.**

    On appeal in a divorce action, where complete record is before the court, the Supreme Court will consider the competent testimony only, and not pass on assignments relative to the admission and rejection of evidence.

2.  **Divorce—Appeal and Error—Assignment of Error—Appellee's Grievances Not Reviewed, Except in Answer to Errors Claimed by Appellant.**

    Where appellee, after judgment of dismissal of complaint and cross-complaint in divorce action, failed to assign errors or take appeal from the court's rulings, he is not in position to review his grievances, except in answer to errors claimed by appellant.

3.  **Divorce—Cross Complaint—Cruelty—Evidence Held Not to Sustain Charges of Cruelty.**

    In wife's action for divorce, where husband by cross-complaint alleged cruelty, and claimed attacks on him with a cup, hammer and pitchfork, evidence held to show that the acts were committed when defendant was the aggressor.

4.  **Divorce—Husband and Wife—Desertion—Denial of Marital Relations Not "Desertion," When Justified.**

    · Where the wife's refusal to allow defendant to occupy the same bedroom was justified by his many acts of cruelty, it did not constitute "desertion."

5.  **Husband and Wife—Husband, by Reason of Residence Thereon, Acquired No Interest in Proceeds of Wife's Farm.**

    Where the wife was the owner of a farm, and personal property thereon was purchased out of proceeds and earnings from the farm, it belonged to the wife, and the husband did not acquire any interest therein by reason of his residence on the farm, in absence of a compensation agreement, especially when it was not shown that the value of his labor exceeded the cost of support of the whole family.

6.  **Divorce—Cruelty—Evidence Held to Warrant Divorce to Wife for Cruelty.**

    In a wife's action for divorce, evidence of defendant's habit of calling her vile names, held to warrant granting a divorce as for cruelty.

**7.  Divorce—Alimony—Husband Entitled to Equitable Portion of Money Realized from His Labor on Wife's Farm.**

> Where divorce was granted wife for husband's extreme cruelty, and farm and personal property thereon were owned by wife, husband **held** entitled to equitable portion of money realized from his labors on the farm after paying for support of the whole family.

Appeal from Circuit Court, Lincoln County; Hon. John T. Medin, Judge.

Action by Jennie A. Brown against Walter W. Brown. From an order and judgment denying a new trial, and an order denying an application to vacate the findings and judgment, plaintiff appeals. Reversed and remanded for further proceedings.

See, also, 193 N. W. 596, 46 S. D. 469.

*Mundt & Mundt,* of Sioux Falls, for Appellant.

*Bielski & Elliott,* of Sioux Falls, for Respondent.

(3.) To point three of the opinion, Appellant cited: Garrett v. Garrett, 96 N. E. 882; Aurand v. Aurand, 41 N. E. 859.

(4)  To point four, Appellant cited: De La Hay v. De La Hay, 31 Ill. 252; Sevens v. Sevens, 107 Ill. A. 141; Peavey v. Peavey (Ia.), 41 N. W. 67; Perry v. Perry (N. Y.), 1 Bark. Ch. 516; Hexamer v. Hexamer, 42 Pa. Super. 226; Huff v. Huff ('W. Va.), 80 S. E. 846, 51 L. R. A. (N. S.) 282; Maben v. Maben, 72 Ia. 658, 34 N. W. 462; Pillar v. Pillar, 22 Wis. 627; Harmon, 16 Ill. 85, 90; Fizette v. Fizette (Ill.), 34 N. E. 799; Barker v. Barker (Okla.), 105 Pac. 347; Maddox v. Maddox (Ill.), 59 N. E. 599; Trechard v. Trechard (Ill.), 92 N. E. 243; McClenahan v. McClenahan (Del.), 80 Atl. 677; Prall v. Prall (Fla.), 50 So. 867; Finley v. Finley (Ky.), 33 Am. Dec. 528; Hawkins v. Hawkins (Md.), 3 Atl. 749; Childs v. Childs, 49 Md. 294; Raynor v. Raynor (Mich.), 14 N. W. 562; Poor v. Poor (N. H). 29 Am. Dec. 664; Calichio v. Calichio (N. Y.), 96 Atl. 658; Kennedy v. Kennedy, 47 N. Y. Super. 56; Pfannebecker v. Pfannebecker (Ia.), 119 N. W. 618; Snouffer v. Snouffer (Ia.), 129 N. W. 326; Schulze v. Schulze, 33 Pa. Super. 325; Wills v. Wills (W. Va.), 53 S. E. 769; Goff v. Goff (W. Va.), 53 S. E. 769; Johnson v. Johnson ('Wis.), 83 N. W. 291; Fink v. Fink (Cal.), 70 Pac. 628; Kupka v. Kupka (Ia.), 110 N. W. 618, 119 A. S. R. 608; Fritz v. Fritz (Ill.), 14 L. R. A. 685; Carter v.

Carter, 62 Ill. 439; Southwick v. Southwick, 97 Mass. 327; Reid v. Reid, 21 N. J. Eq. 331; Schoesson v. Schoessen (Wis.), 53 N. W. 856; Berger v. Berger, 23 Pa. Co. Ct. 234; Reynolds v. Reynold (W. Va.), 69 S. E. 381; Prall v. Prall (Fla.), 50 So. 867; William v. Williams (Mo.), 99 S. W. 42; Wills v. Wills (W. Va.), 82 S. E. 1092; Warner v. Warner (Mich.), 20 N. W. 557; Doolittle v. Doolittle (Ia.), 43 N. W. 616.

(6)    To point six, Appellant cited:    Marks v. Marks, 56 Minn. 264, 57 N. W. 651, 45 A. S. R. 466; Gardner v. Gardner, 23 Nev. 207, 45 Pac. 139; Barnes v. Barnes, 95 Cal. 171, 30 Pac. 298; Johnson v. Johnson (Ia.), 47 N. W. 92; Wilson v. Wilson (R. I.), 13 Atl. 102; Faris v. Faris (Nebr.), 185 N. W. 347; Reinhard v. Reinhard (Wis.), 71 N. W. 803; Fleming v. Fleming (Cal.), 30 Pac. 566, 29 A. S. R. 124; Moshier v. Moshier (N. D.), 113 N. W. 99; Douglas v. Douglas (Ia.), 47 N. W. 92; Briggs v. Briggs (Mich.), 20 Mich. 34; Whispell v. Whispell, 4 Barb. (N. Y.) 218; 19 C. J. 49; Shook v. Shook (Ia.), 97 N. W. 680; Turner v. Turner (Ia.), 97 N. W. 997; Craig v. Craig (Ia.), 105 N. W. 447; Leuttjohann v. Leuttjohann (Ia.), 126 N. W. 172; Glass v. Wynn, 76 Ga. 319; Hildebrand v. Hildebrand, 41 Okla. 306; Kissam v. Kissam, 21 App. Div. 142, 47 N. Y. S. 270; Pooley v. Pooley (Ia.), 157 N. W. 129; McCue v. McCue, 157 N. W. 369; Robinson v. Robinson (N. H.), 23 Atl. 362, 49 A. S. R. 632; O'Neill v. O'Neill, 163 N. Y. S. 250; Carr v. Carr (Ala.), 55 So. 96; Fanner v. Fanner (Ala.), 50 So. 434; Morris v. Morris, 14 Cal. 76, 73 Am. Dec. 615; McClintock v. McClintock (Ky.), 144 S. W. 68; Sackrider v. Sackrider (Ia.), 14 N. W. 507; Wheeler v. Wheeler (Ia.), 5 N. W. 689, 36 Am. Rep. 240; Andrews v. Andrews (Cal.), 52 Pac. 298; Powelson v. Powelson, 22 Cal. 359; Rosenfeld v. Rosenfeld (Colo.), 40 Pac. 49; Pooley v. Pooley (Ia.), 157 N. W. 817; Rader v. Rader (Ia.), 113 N. W. 817; Luick v. Luick (Ia.), 109 N. W. 783; Berry v. Berry (Ia.), 88 N. W. 1075; Brandt v. Brandt (Cal.), 174 Pac. 55; McDonald v. McDonald (Cal.), 102 Pac. 927; Wickland v. Wickland (Cal.), 126 Pac. 507.

(7) and (5)    To points seven and five, Appellant cited: Reid v. Reid (Cal.), 44 Pac. 564; Page v. Estes, 19 Pick 269; Somers v. Somers (Kan.), 17 Pac. 841; Brenger v. Brenger (Wis.), 125 N. W. 119; Clark v. Else et al, 21 S. D. 112; Bristol v. Bristol

(Nebr.), 185 N. W. 972; Nelson v. Nelson (Minn.), 183 N. W. 354; Warren v. Warren, 36 S. D. 575, 156 N. W. 60; Hamilton v. Hubbard, 134 Cal. 603, 65 Pac. 321; Corbett v. Sloan, 53 Wash. 1, 99 Pac. 1025; Turner v. Shaw (Mo.), 8 S. W. 897; 9 A. S. R. 629; United States Fidelity & Guaranty Co. v. Lee, 58 Wash. 16, 107 Pac. 870; Donovan v. Olsen (Wash.), 92.Pac. 276; Buckley v. Wells, 33 N. Y. 518; Wells & Co. v. Boker (Ia.), 79 N. W. 59; Roll v. Drohen, 245 Fed. 684; Martin v. Banks (Ark.), 115 S. W. 928; Shark v. Fitshugh (Ark.), 88 S. W. 929; Elliott v. Atkinson (Ind.), 90 N. E. 636; Guthrie v. Hill (Ky.), 127 S. W. 767; Martin v. Remington (Wis.), 76 N. W. 614; Pease v. Barkowsky, 67 Ill. App. 274; Larsen v. Carter (Idaho), 94 Pac. 825; Renter v. Stuckhart (Ill.), 53 N. E. 1014; Olson v. O'Conner (N. D.), 84 N. W. 359, 81 A. S. R. 595; Pfingsten v. Pfingster (Wis.), 159 N. W. 921.

DILLON, J. This is a divorce action on the grounds of extreme cruelty and willful neglect. The parties resided on a farm in Lincoln county, this state, for some 17 years. Three children were born of the marriage, all of whom are now married. Defendant by cross-complaint alleges cruelty and willful desertion on the part of the plaintiff. On March 27, 1922, the court made findings of fact and conclusions of law. On such findings the court decreed that the complaint and cross-complaint be dismissed, without cost to either party. The basis of this conclusion was:

"That each of the parties has a cause of action for a divorce against the other, and, both being to blame for the condition that exists in their home, the court will leave them where it finds them, and their complaints will be dismissed."

From the order and judgment denying a new trial, plaintiff appeals.

Plaintiff next made application to vacate the findings and judgment and to reinstate the action, and that findings of fact and conclusions of law and judgment on the merits be entered. On the refusal to grant such order, the second appeal was taken. The complete record of the consolidated appeals is before this court.

[1] This court will only consider the competent testimony. This rule will exclude all incompetent testimony, and render it unnecessary to pass upon the numerous assignments relative to the admission and rejection of evidence:

"Where improper evidence was admitted by the trial court, the judgment will not be reversed on that ground, but the appellate court will disregard such testimony as it finds incompetent and render judgment as equity and justice may require on the pleadings and the evidence which was properly admitted." 2 R. C. L. 284.

"By the great weight of authority an appellee or defendant in error is not entitled, in the absence of a statute authorizing cross-assignments of error, to present for review exceptions taken by him to rulings, orders, instructions, decisions, or findings of the trial court, unless he has taken or sued out a separate, or cross-appeal, petition in error, or writ of error. This rule operates to prevent an appellee or defendant in error, who has not appealed or brought error, from obtaining affirmative relief by way of a modification or an amendment of the judgment under review, even though the relief sought extends only to the adjustment of the costs, or to the increase or reduction of the amount of the recovery. He cannot go beyond supporting the judgment and opposing every assignment of error. For the same reason an appellee or defendant in error is not entitled to allege error in the rendition of judgment against him on his counterclaim, where he failed to prosecute an appeal therefrom, or to sue out a writ of error in the rendition of judgment against him on his counterclaim, where he failed to prosecute an appeal therefrom or to sue out a writ of error thereto." 4 Corpus Juris 694.

[2] Under this rule, respondent is not in any position to review his grievance, except in answer to the errors claimed by plaintiff in this appeal; he having failed to assign any errors or take any appeal from the rulings of the court.

Appellant insists that findings Nos. 3, 4, 6, and 10 in respect to the alleged cruelty and desertion on the part of the plaintiff, and in respect to the accumulations of property of plaintiff and defendant, are not sustained or justified by the evidence. After a thorough examination, we conclude that the court erred in making these findings.

[3] The findings in respect to the cup, hammer, and pitchfork incidents are not sufficient to justify the inference of physical cruelty.

The cup incident may be summarized as follows: The par-

ties, while seated at the table, became engaged in a dispute about borrowing money at the bank. The defendant wished plaintiff to call at the bank and sign a note for money borrowed. The plaintiff insisted that she would not allow any one to force such deals upon her. The defendant then stood up, shook his fist at her, and swore at her, and started to grab and choke her, saying, "God damn you, if you were a man, I would kill you." The son stepped in between them and told defendant to "cut it out." The daughter, Margaret, rushed over to McGee's across the road, to get him to come over and "stop papa from killing mama." It seems clear that defendant, by threats and attacks on plaintiff, was the aggressor, and had provoked the quarrel which caused plaintiff, in her excitement, to throw the cup.

The hammer incident may be summarized as follows: Plaintiff does not remember the incident, but the son says the hammer was thrown in his direction, and did not go anywhere near the defendant. Evidently no physical attack was made by the throwing of the hammer.

The pitchfork incident may be summarized as follows: No facts are presented by which the court can determine the probable cause for provocation. There was a heated argument between plaintiff and defendant. He had followed her into the barn. Defendant says that plaintiff ran after him with the pitchfork, and that the son took the pitchfork away from plaintiff. We fail to discover any real assault made with the pitchfork. It is evident that these three acts took place when plaintiff was in a high state of excitement and that her acts were all under provocation. We think it is a fair inference that these acts were committed at a time when the defendant was the aggressor. There is no dispute that after these three incidents, and up to February 1, 1919, they occupied the same bed, and that these acts were all condoned.

The evidence clearly shows that the defendant was in the habit of calling the plaintiff such names as "God damn son of a bitch," "damn fool," "don't know anything," "you are crazy," "low-down dirty bitch"; calling plaintiff a "whore" in the presence of the children.

When plaintiff took the daughters to Rochester for medical treatment defendant charged that her purpose in going there was to sport around and flirt with the doctors. He often charged that

she had committed adultery with a number of doctors whom he
named. All of these charges were falsely and maliciously made.
In the presence of one Sheffer, defendant said:

"I wish to God that I never married you." "If you committed
suicide, it would be a damned good thing."

When plaintiff's application for lodge membership was pend-
ing, the defendant stated that the lodge was composed of a "God-
damned bunch of old hens."

Defendant forbade the bank in which plaintiff's money was
deposited from honoring her checks. It clearly appears that de-
fendant's motive was to get possession of the plaintiff's property.

[4] The charge that plaintiff refused to allow defendant to
occupy the same bedroom is sustained by the evidence; but she
was justified in so doing, in view of the many acts of cruelty on
his part. We conclude that the charge of desertion is not made
out. Our statute defining desertion contains this clause: "When
there is no just cause for such refusal." This section of our
statute comes from California and has been construed by that
court. In Fink v. Fink, 137 Cal. 559, 70 Pac. 628, it was held
that "extreme cruelty was a sufficient justification in refusing him
the marital relations."

In Fritz v. Fritz, 138 Ill. 436, 28 N. E. 1058, 14 L. R. A. 685,
32 Am. St. Rep. 156, it will be noticed that, under our statute, the
desertion or absence which will justify a divorce must be "without
any reasonable cause":

"The denial of marital intercourse will not entitle a husband
or wife to a divorce, and therefore cannot be regarded as such
desertion as is contemplated by the statute."

In Harman v. Harman, 16 Ill. 85, the court said:

"The causes must be grave and weighty, and show a state of
personal danger incompatible with the duties of married life.
It is not mere * * * want of civil attentions, occasional sal-
lies of passion, denials of little indulgencies and particular accom-
modations, and which do not threaten bodily harm. These are
not legal cruelty."

In Craig v. Craig, 129 Iowa 192, 105 N. W. 447, 2 L. R. A.
(N. S.) 669, the court said:

"Possessed of no more than ordinary sensibilities, we can
hardly see how defendant's conduct could do otherwise than

deeply wound the wife, whom he had promised to love; * * * cleave only unto her. Such wounds are deeper and more dangerous to health than blows, more harassing than profane language, and more distressing than vulgar talk. To trusting and sensitive women they are more brutal than bodily injury, and leave scars which never can be healed. That it justifies a divorce is too clear for argument or the citation of authority."

In Martin v. Martin, 150 Iowa 223, 129 N. W. 816, the court held:

"We are satisfied from the evidence that the accusations made by the defendant have seriously affected the plaintiff as to her nervous condition and health ,and that a continuance of them would literally endanger her life."

In Brandt v. Brandt, 178 Cal. 548, 174 Pac. 55, it is said:

"Ordinarily false charges of adultery, made by either the husband or wife maliciously and without probable cause, constitutes legal cruelty."

In Morris v. Morris, 57 Wash. 465, 107 Pac. 186, the court said:

"To a sensitive wife, * * * charges of unchastity * * * would constitute a cruelty compared with which the most brutal physical assault would be a soothing balm."

In Walton v. Walton, 57 Neb. 102, 77 N. W. 392, the court held:

"No conduct on the part of a wife, short of notorious and shameless unchastity, if that does, justifies her husband in calling her a 'whore.'"

In Hildebrand v. Hildebrand, 41 Okl. 306, 137 Pac. 711, the court said:

"To a pure and virtuous woman, in no way could a husband show his cruelty and inhumanity more completely than by false and unfounded charges of want of chastity; and, where the charges are repeated and continued for a long term of years, and embrace many alleged facts of adultery, which, if true, would make the wife a being little better than a common prostitute, the offense is aggravated almost beyond the pale of human forgiveness. When a husband descends to such a level, and becomes so vicious and depraved, and so completely forgetful of the sanctity of the marital relation, then indeed, in his case, the institution of

matrimony fails. The law does not require that a good woman further continue to cohabit with such a type."

It follows that the court erred in refusing to vacate the judgment of dismissal and to reinstate the case.

[5] It appears that the defendant, during the years 1919 and 1920, was actually controlling the proceeds from plaintiff's farm without the plaintiff's consent. It is clear that the court erred in denying plaintiff's application for an order on Walter W. Brown and others to account for proceeds of hogs, grain, and corn sales. Such funds belong to the plaintiff and that the defendant has no interest therein.

We fail to find any evidence whatever to sustain the court's findings that the plaintiff and defendant jointly purchased the remaining undivided one-half of the S. E. ¼ Sec. 7-99-49, or that they through their joint efforts and enterprise had accumulated personal property of the value of $2,500, or that the real property of the value of $14,750 was the result of the joint efforts and accumulation of plaintiff and defendant; while the evidence is clear that the plaintiff is the owner of all of said real estate and personal property, including stock, machinery, and automobiles. Such personal property, having been purchased out of the proceeds and earnings from the farm, belong to the plaintiff as her individual property. The defendant did not acquire any interest in the wife's property by reason of his residence on the farm, in the absence of an agreement for compensation, especially when it is not shown that the value of such labor exceeds the cost of the support of the whole family.

[6] We are of the opinion that the evidence warrants the granting of a divorce to plaintiff. That defendant should account for the proceeds of hog, corn, and grain sales. That plaintiff is entitled to have set off to her all the real estate of record in her name, namely, the S. E. ¼ of section 7, township 99, range 49, as her individual property free from all debts and demands of defendant, including the household effects and her wearing apparel. Plaintiff ought to be required to pay the balance due on the land, and the balance due on the indebtedness for the permanent improvements on the farm, with an injunction protecting her rights from any interference of the defendant in her possession of such property, and from coming on such premises or

attempting to manage her affairs, and that defendant should be divested of all homestead rights in said premises.

[7]   The defendant ought to be awarded an equitable portion of the money realized from his labors on the farm, after paying for the support of the whole family and complying with orders of the court.

The judgment and order appealed from are reversed and a new trial is granted. No costs will be taxed on this appeal.

Note.—Reported in 197 N. W. 153.   See, Headnote, American Key-Numbered Digest, (1) Divorce, Key-No. 184(3), Appeal and error, 4 C. J. Sec. 2653; (2) Divorce, Key-No. 184(2), 19 C. J. Sec. 474; (3) Divorce, Key-No. 130, 19 C. J. Sec. 367; (4) Divorce, Key-No. 37(20), 19 C. J. Sec. 111; (5) Husband and wife, Key-No. 124, 30 C. J. Secs. 473, 474; (6) Divorce, Key-No. 130, 19 C. J. Sec. 367; (7) Divorce, Key-No. 252, 19 C. J. Sec. 773 (1925 Anno.).

For authorities discussing the question of refusal of marital intercourse as grounds for divorce, see notes in 14 L. R. A. 685 and L. R. A. 1915B, 771.

On profanity and obscenity as grounds for divorce, as cruel and inhuman treatment, see note in 12 L. R. A. (N. S.) 820.

On Rev. Code, 1919, Sec. 139, see annotations Kerr's Cyc. Codes, 1920, Civ. Code, Sec. 94.