BROWN, Appellant, v. BROWN, Respondent.

(216 N. W. 587.)

(File No. 6084. Opinion filed December 13, 1927.)

See, also, 49 S. D. 167, 206 N. W. 688.

*Mundt & Mundt*, of Sioux Falls, for Appellant.
*Bielski, Elliott & Marker*, of Sioux Falls, for Respondent.

MISER, C. Appellant and respondent were married in 1896. That the marriage was attended more largely by material success than by domestic felicity is attested by the decisions of this court. Brown v. Brown, 46 S. D. 469, 193 N. W. 596; Id., 47 S. D. 168, 197 N. W. 153. After the decision last cited, respondent therein, who is respondent also herein, moved for a rehearing, which motion was denied; but the words "and the cause is remanded for further proceedings in harmony with this opinion," in the last paragraph of said opinion were amended and changed to read, "and a new trial granted." Thereafter, a new trial was had. At this trial, the evidence at the former trial was by stipulation received, together with the objections, exceptions, and exhibits. Additional evidence was also received. Thereafter, findings of fact and conclusions of law were made by the trial court and judgment duly entered.

By the judgment, plaintiff and appellant was granted a decree of absolute divorce, and there was set off to her, with full and exclusive right of possession, all real estate in possession of the parties, with all improvements thereon, being an undivided half interest in a quarter section of land in Lincoln county, said half interest being valued at $12,000, also all personal property of which either party was then possessed, valued at $2,000, exclusive of certain shares of stock in an elevator company, valued at $500, which were decreed to respondent. The judgment provided that appellant, to whom all said real and personal property had been so set over, should pay all the joint obligations of appellant and respondent except the sum of $2,195, to be paid by respondent. Therein, it was also decreed that the respondent have judgment against appellant for the sum of $4,402.50, which was declared to be a lien on the real property, subject to the lien of the taxes and

to the lien of a real estate mortgage for the sum of $2,500. But this judgment in respondent's favor for the sum of $4,402.50 provided for the payment by respondent of the sum of $2,195 to the creditors who had charged against him bills incurred either in meeting the running expenses of the farm, or in the making of improvements on the farm, or in the purchase of personal property, all of which were set over to appellant. Appellant was already the owner of the other undivided one-half interest in the quarter section, having inherited it from her father prior to her marriage to respondent.

When married, in addition to having the real property aforesaid, appellant had also acquired by inheritance about $960 in money. The value of respondent's property when he married was $762. In 1903 the parties and their three children came to South Dakota; and, shortly thereafter, appellant's brother deeded to appellant his undivided half interest in the quarter section and farm equipment valued at $100. Thereby appellant acquired title to the entire quarter section, paying for the half interest by giving a promissory note for $4,500 secured by a mortgage on the entire farm. Whether or not respondent signed the note and mortgage does not appear, but, after the first year, all improvements made on the farm and all equipment purchased was from the joint farming enterprise. The first payment on the mortgage indebtedness was made in 1915, at which time $500 was paid, and, thereafter, a payment of $1,500 was made in April, 1918. After about the first year in South Dakota, the parties had a joint checking account, and, for 10 years, they also farmed other land, the proceeds from which, so far as not used in the operation of the entire farm, support of the family, or improvement of the homestead, went into the joint account, nor was any account kept of the expense of operating the rented land. From the time of moving upon the place until the time of the first trial, respondent ran the place as though it were his own, borrowed money, appellant signing the notes with him, hired help, sold the live stock and grain, and, according to appellant's testimony, otherwise handled both the real and personal property as though it were his own, despite the fact that his management was unsatisfactory to appellant, who testified as follows:

"He [respondent] is what I would say is a good, average

farmer. But he has not farmed my farm to suit me. I always thought because I owned the farm that I had a right to say how it should be farmed, and that I had a right to run it. I have not paid Mr. Brown any wages and didn't agree to do so. I did not ask him to come out here to South Dakota from Colorado."

The trial court found, on the first trial, that each of the parties had a cause of action for divorce against the other, but, inasmuch as it also found that both were to blame for the conditions that existed, dismissed their complaint. Upon appeal, this court held that the evidence warranted the granting of the divorce; and, in said opinion, this court said, inter alia:

"That defendant should account for the proceeds of hog, corn, and grain sales, and that the defendant ought to be awarded an equitable portion of the money realized from his labors on the farm, after paying for the support of the whole family and complying with the orders of the court."

The case was remanded for a new trial.

From that portion of the judgment of the trial court on the second trial which grants to appellant an absolute divorce, and which sets over to appellant all the real property and all the personal property, there is no appeal. The appeal is from that portion of the judgment which decrees to respondent the ownership of the elevator stock valued at $500, and which decrees that respondent should have judgment against appellant for the sum of $4,402.50; and appellant assigns as error the refusal of the trial court to find that the total income above expenses, for 17 years of operation of that farm, having excluded the year 1911, was approximately $34,000, and that respondent had failed to account for $23,271.04 of said income, and that the cost of the support of the family for that period was $19,955; that, inasmuch as the reasonable wages for the labor of respondent would be $11,040, and, inasmuch as respondent's wages as appellant's hired man had fallen short by the sum of $8,915 of paying for the family support, he should be accountable for that sum in addition to the $23,271.04 unaccounted for, or the total sum of $32,186.04. Therefore, in addition to having set over to appellant all the real property and all the personal property, appellant contends that, after crediting respondent with certain bills paid and with $17,000, his half of the 17 years' income (although appellant still insists she is entitled to all the

income), that she should have judgment against respondent for $8,747.25. Whether this would constitute an award to the respondent of that "equitable portion of the money realized from his labors on the farm "indicated in the opinion last above cited,. we do, not determine. It is apparent from the record that the learned trial judge could not have made such requested findings from the evidence. Certainly, nothing approaching the dignity of evidence was presented to the trial court from which it could determine either the income, gross or net, or the cost of family support. Even appellant, who demands of respondent this rigid accounting, put in evidence no account of the household expenses, and, though from 1896 until 1903, she herself received the rentals from her undivided half interest in the farm, is able to testify only as to the amount received in two years, to-wit, $117.42 in 1897, and $359.25 in 1899. Nor are we advised as to whether these sums represented gross earnings or net income.

The trial court found—and there was ample evidence to sustain it—that appellant and respondent were engaged during those years in a joint farming enterprise; that their joint accumulations, after deducting all expenses, were represented by real estate valued at $12,000 and personal property valued at $2,500; that, as against those ultimate assets of $14,500, this marital farm partnership, if such it might be termed, had accumulated obligations amounting to $8,685; that, therefore, upon its dissolution, there was to be divided $5,815. This the trial court divided substantially equally, by setting over to appellant all assets of the enterprise and making her, in effect, responsible for the payment of its obligations, and by giving to respondent the elevator stock and a judgment against appellant, which in effect was for $2,207.50.

But appellant contends that the law of this case was established by the decision of this court in 47 S. D. 168, 197 N. W. 153, basing her contention on Osborne & Co. v. Stringham, 4 S. D. 593, 57 N. W. 776, and Davis v. Davis, 29 S. D. 421, 137 N. W. 283; and that the trial court had no right to so apportion the assets. Whether, indeed, this case furnishes a proper occasion for the application of the rules announced in Osborne & Co. v. Stringham and Davis v. Davis, supra, by reason of the fact that a new trial was granted and additional evidence received, we do not determine. Such directions as were given to the trial court in 47

S. D. 168, 197 N. W. 153, presumed that a reasonably accurate accounting of all sales could and would be made. Having amended its former opinion so as to grant a new trial wherein new evidence was received, it would not be contended that this court had already made findings of fact to be adopted by the trial court irrespective of the evidence.

Such an accounting was not made, unless it be that respondent accounted when he testified that, after paying all living expenses, operating expenses, interest, taxes, and two payments on the principal of the mortgage, the farm with its improvements and equipment represented the net proceeds of every sale made, or unless respondent accounted when he testified that every dollar that was borrowed was borrowed for the farm and that, except for $500 worth of elevator stock, the farm and its equipment represented the net results of the labors of appellant and himself thereon. Presumably the trial court was of the opinion that, after accounting for $10,699.16 with reasonable exactness, respondent's failure to account for the balance of the money taken in during the 18 years was due to absolute inability to account. The failure of these litigants to keep accounts is not to be commended. However, in this case, the trial court was confronted with the unpleasant and difficult task of apportioning, after an extended and stormy voyage, the salvage from the wreck. The court would not have been justified in saying to the party, who had apparent title to none of their joint accumulations, that merely because he did not keep accounts he should have nothing. Inasmuch as the briefs of the parties contain more quotations from the Scripture than helpful citations to legal authority, it may be fitting to observe that "For unto every one that hath shall be given, * * * but from him that hath not shall be taken away even that which he hath," is not a maxim of equity.

We hold, therefore, that the refusal of the trial court to make the findings requested by appellant was not error. First, because there was no evidence to support the findings as to the amount of net income, the amount accounted for, or the amount expended for family support; second, because there was no evidence that respondent was working for wages. Certainly, respondent was no more a mere hired man on appellant's farm than is a farm wife who attends to the many duties of that occupation a hired maid in

her husband's kitchen. We have here presented no case of interference by the court with the separate property of the wife, nor of a court giving to an injured wife that allowance permitted by section 165, Rev. Code. No sufficient reason appearing for giving to either the property of the other, the trial court divided substantially equally between them the fruits of their joint enterprise. The record discloses neither error nor inequity of which appellant can complain.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and POLLEY, SHERWOOD, BURCH, and BROWN, JJ., concur.