Shirley SCHWAB, Plaintiff and Appellee,

v.

William G. SCHWAB, Defendant and Appellant.

No. 17990.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1993.

Decided Aug. 25, 1993.

Thomas P. Tonner of Tonner, Tobin & King, Aberdeen, for plaintiff and appellee.

Drew C. Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and appellant.

WUEST, Justice.

William G. Schwab (William) appeals a judgment and decree of divorce from Shirley Schwab (Shirley). We affirm in part and reverse and remand in part.

## FACTS

The parties were married in 1971. Three children were born during the marriage. The oldest has reached the age of majority. The remaining two children are ages fourteen and eleven.

At the beginning of the marriage, the parties lived and worked in Minneapolis, Minnesota. As they began having children, they moved to South Dakota to raise their children. They put in long hours caring for the family and developing a restaurant and bar business. While Shirley worked primarily in the home, she also provided child care, kept books for the businesses and performed day care services for additional income.

In 1982, the family moved to Missouri where William had secured employment with a frozen food company. Shirley continued to care for the children and performing day care services. In 1984, William injured his back when a gust of wind swung the door of his delivery truck against his spine. He was required to undergo surgery and the family moved to Aberdeen, South Dakota.

William's back surgery failed to enable him to return to work. Eventually, he obtained total disability status with his workers' compensation carrier and with social security. At that time, William received a lump sum settlement of approximately $30,000. Half of the settlement was designated for future medical expenses.

After William's disability and the parties' return to South Dakota, Shirley started work outside the home, operating her own cleaning service.

William's injury seemed to change his personality and, as time went on, he became difficult to live with. He became lethargic and "ornery," occupying his time with hunting, fishing and golf. As a result, the parties experienced a strain in their marital relationship. Eventually, Shirley sued for divorce. After trial, the court entered its findings of fact, conclusions of law and decree of divorce. The decree granted Shirley an absolute di-

vorce from William, divided the marital property, awarded custody of the minor children to Shirley and set William's visitation rights and child support obligations. William appeals.

## ISSUE ONE

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN AWARDING ALIMONY TO SHIRLEY AND IN DENYING WILLIAM'S REQUEST FOR ALIMONY?

■ The divorce decree requires William to maintain health insurance on the entire family through his former employer. The coverage is to be extended to Shirley. William is able to procure the insurance at a monthly cost of $328. He contends this constitutes an indirect award of alimony to Shirley and that the award was an abuse of the trial court's discretion.

> 'The amount and length of alimony payments is ... left to the discretion of the trial court.' This court will not disturb an award of alimony unless it clearly appears that the trial court abused its discretion. In awarding alimony, the trial court must consider the following factors: 'the length of the marriage, the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health and physical condition; their station in life or social standing; and the relative fault in the termination of the marriage.'

*Studt v. Studt*, 443 N.W.2d 639, 643 (S.D. 1989) (citations omitted).

In this instance, the parties were married for twenty-one years. Both parties have a high school education and little other training or technical experience. Although William has been declared disabled and unable to work for purposes of workers' compensation and social security, he does receive monthly disability benefits of $1,680 per month. $453 of that amount is paid directly to Shirley for the benefit of the minor children. This leaves William with an income of $1,227 per month. Shirley's 1991 adjusted gross income from her cleaning business was $874 per month.

Shirley was awarded the parties' marital home, subject to the debt thereon, leaving her with an equity of $10,900. Shirley was also awarded $5,281 in personal property, her cleaning business and a car, both of which the trial court found had no value. William was awarded a boat and three vehicles with an equity of $5,745, $3,040 in personal property and required to pay medical bills totaling $1,350.

Shirley is forty-two years of age and William is forty-six. Although William is totally disabled, there is no evidence of any physical infirmity or ill health on Shirley's part. The trial court specifically found that, "both parties have about the same education and station in life and social standing." Finally, with regard the parties' relative fault in the termination of the marriage, the trial court found:

> Shirley testified that after William was injured, his personality changed, and he became difficult to live with; he became lethargic; he became ornery and that this conduct added together made it impossible to live with him. Shirley is entitled to a divorce under mental cruelty. Shirley also testified that William had on at least two occasions physically accosted her and that on at least three occasions Shirley had to step between William and the children for fear of physical retribution to the children.

\* \* \* \* \* \*

William has counterclaimed on the grounds of sexual abandonment, and that claim is denied.

William argues that application of the foregoing factors establishes his entitlement to alimony from Shirley rather than the result reached by the trial court. In support of his argument, William asserts that, because of his disability, he has no capacity to earn a living and that Shirley was awarded the only income producing property, i.e., the cleaning business.

■ Despite the fact that William is disabled, he does have an income, i.e., $1,227 per month in disability benefits. Moreover, this court has never considered an alimony obligor's disability, in and of itself, sufficient

cause to terminate an alimony obligation. *See, e.g., Paradeis v. Paradeis,* 461 N.W.2d 135 (S.D.1990); *Lampert v. Lampert,* 388 N.W.2d 899 (S.D.1986); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). The inquiry in such cases is the effect the illness or inability to work has on the financial ability of the obligor to pay. *See, Id.*

■ Here, William's disability has little effect on his financial ability to provide health insurance for Shirley. Under the child support provisions of the divorce decree, he would be required to provide health insurance for the children in any event. Shirley gave unrefuted trial testimony that William's insurance is a family policy and there is no change in cost whether two or twenty-two family members are carried on the policy. Thus, William is able to provide the health insurance for Shirley, suffering no financial detriment to himself but at a great financial benefit to her. We find no abuse of discretion.

■ William's contention concerning the award of income producing property to Shirley is meritless. Neither party in this case was awarded income producing property of any significance. Shirley was awarded her cleaning business. However, the only significant asset of the business, other than Shirley herself, is a cleaning contract with a local church. The contract is unassignable. Therefore, even had the business been awarded to William, it would have been valueless in the absence of Shirley.

■ William also argues that Shirley was at fault in the termination of the marriage for withholding marital relations and that this factor requires that Shirley pay him alimony. In *Brown v. Brown,* 47 S.D. 168, 197 N.W. 153 (1924), this court found that although the wife had refused to sleep with her husband, she was entitled to a divorce when it was the husband's actions that had led to the refusal of marital relations. The same is true in the instant case. The trial court found William at fault in the termination of the marriage because he had become difficult, lethargic, ornery and impossible to live with. Although Shirley never specifically identified this as the reason for curtailing marital relations, it is clearly a reasonable inference. Thus, contrary to William's assertions, the element of fault in this case does not support an award of alimony to William.

## ISSUE TWO

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN DIVIDING THE MARITAL PROPERTY?

"A trial court has broad discretion with respect to property division and we will not set aside its judgment unless a clear abuse of discretion is shown." *Studt,* 443 N.W.2d at 642. William asserts the trial court abused its discretion in the property division by inaccurately valuing the marital assets. We disagree.

> This court has previously held that '[e]xactitude is not required of the trial court in the valuation of assets in a dissolution proceeding; it is only necessary that the value arrived at lies within a reasonable range of figures.' The only time this court will interfere with a trial court's valuations is when they are clearly erroneous or where assets are completely overlooked by said court. In the absence of a stipulation as to the value of marital assets, the parties must 'produce hard evidence as to those values other than their own personal opinions.' The trial court, however, is not required to accept either party's proposed valuation.

*Studt,* 443 N.W.2d at 641 (citations omitted). ■ No "hard evidence" of property values was submitted by either party. The trial court was free to accept or reject either parties' proposed valuations. *See, Studt, supra.* The trial court specifically found Shirley's valuations to be the more credible of the two and accepted her figures. This it was free to do under the established precedent of this court and, accordingly, we find no abuse of discretion in the property division.

## ISSUE THREE

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN AWARDING SHIRLEY ATTORNEY FEES?

During trial, Shirley submitted an exhibit establishing she had incurred $2,886 in attor-

ney fees. The trial court awarded her partial attorney fees of $1,000. William contends this award constituted an abuse of the trial court's discretion.

> SDCL 15–17–7 gives the trial court discretion to award attorney fees in divorce cases, and we will not disturb its decision unless it has abused its discretion. The factors the court may consider in deciding whether to award attorney fees include the relative financial condition of the parties, the relative fault of the parties in prolonging litigation, the complexity of the issues, whether briefs were required and whether the case was appealed to the Supreme Court.

*Radigan v. Radigan*, 465 N.W.2d 483, 487 (S.D.1991) (citations omitted).

The relative financial condition of the parties has been previously outlined in this decision. As for the parties' relative fault in prolonging litigation, the trial court found:

> In Findings, which supposedly were to assist the Court, [Shirley] would assign an equity of $16,880.00 to [her] property and $25,540.00 to William's property whereas [William] would value equity of Shirley's property of $25,297.00 and [his own] at $12,105.00. Such an astonishing variation of values in the personal property indicates to the Court that counsel for the respective parties have gone with their clients on a leave of absence from reason. Rather than assist the Court, their findings are designed to confuse the Court. I find [Shirley's] valuations the more credible of the two. When a party so blatantly misstates value, the Court may opt to disregard the testimony in toto.

With regard to the complexity of the issues, the trial court found, "[t]here were no unusual or complicated legal issues involved in this divorce ..." The bill submitted as evidence of Shirley's attorney fees reflects no charge for preparation of trial briefs. Finally, as is obvious, this case has been appealed to the Supreme Court.

Neither Shirley nor William were awarded any substantial liquid assets. William's monthly income is approximately $353 more than Shirley's. William apparently misstated property valuations to the trial court which caused it confusion in the entry of its findings and thereby prolonged the litigation to that extent. Based upon these considerations, we find no abuse of discretion in the award of $1,000 in partial attorney fees to Shirley.

## ISSUE FOUR

## DID THE TRIAL COURT ABUSE ITS DISCRETION IN SETTING WILLIAM'S CHILD SUPPORT OBLIGATION?

> This court's standard of review in child support cases is whether the trial court abused its discretion in setting the support. In this review, we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion.

*Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D.1991) (citations omitted). SDCL 25–7–6.2 sets forth mandatory guidelines which courts must follow in setting child support. *See, Johnson v. Johnson*, 451 N.W.2d 293 (S.D.1990). There may be no deviation from the guidelines unless there is an entry of specific findings concerning factors for deviation listed in SDCL 25–7–6.10. *Id.* The trial court's findings of fact in calculating a child support obligation will not be disturbed on appeal unless clearly erroneous. *See, Nelson v. Nelson*, 454 N.W.2d 533 (S.D.1990).

The trial court found that the parties had a combined net monthly income of $2,554. Based upon the parties' combined net monthly income and the child support schedule at SDCL 25–7–6.2, the trial court set their mutual child support obligation for the two minor children at $700 per month.

The trial court also found that William contributed sixty-six percent of the parties' combined net monthly income and Shirley thirty-four percent. Sixty-six percent of the $700 mutual child support obligation resulted in a child support obligation for William of $462 per month. The trial court also appropriately determined that William's monthly child support obligation must be credited

with the $453 per month in social security disability benefits for the two minor children. *See, Grunewaldt v. Bisson,* 494 N.W.2d 193 (S.D.1992); *Hawkins v. Peterson,* 474 N.W.2d 90 (S.D.1991) (child support obligor is entitled to credit against monthly child support obligation for amount of social security disability benefits received by children because of obligor's disability). This would have left William with a monthly child support obligation of $9 (i.e., $462 − $453 = $9). However, the trial court added the entire monthly cost for health insurance for the two minor children (i.e., $131) to William's monthly child support obligation. This left him with a child support obligation of $140 per month.

William argues that the trial court's addition of the monthly health insurance cost for the children to his monthly child support obligation violates the provisions of SDCL 25–7–6.16. He asserts that this error creates an abuse of discretion in the trial court's child support award. We agree.

SDCL 25–7–6.16 provides:

The court *may* enter an order for health and dental insurance coverage. Medical insurance shall be provided for the benefit of the minor child whenever practical. The cost of the insurance attributable to the child shall be determined by dividing the out-of-pocket cost of the insurance to the parent by the number of individuals insured thereunder and *shall* be apportioned between the parents on the basis of income or income imputed as provided in §§ 25–7–6.1 to 25–7–6.17, inclusive. If one parent pays the entire amount, he *shall* either be reimbursed by the other parent for the other parent's portion of the payment, or *shall* receive a credit against his support obligation, whichever is appropriate. Any costs not covered by insurance shall be apportioned between the parents in proportion to the support obligation of each parent. (emphasis added).

■ The plain language of this statute makes clear that an award of health insurance coverage as part of a child support decree is not mandated unless the trial court finds the award to be "practical." If the award is made, the statute does *not* require that the cost of the insurance be added to the monthly child support obligation of the obligor parent as was done in this case. Such a requirement would make no sense because the cost of health insurance coverage is not paid by one parent to the other parent but is paid *to an insurance company* for the benefit of the children. In this instance, William pays for the insurance through his former employer.

■ The plain language of SDCL 25–7–6.16 *does* mandate that if health insurance is awarded as part of a child support decree the cost of the insurance for the children must be apportioned between the parties on the basis of their income. Here, the monthly cost for the health insurance for the two children is $131. Based upon the parties' income, William is responsible for sixty-six percent of this amount and Shirley for thirty-four percent or $86.46 and $44.54 respectively. Since William pays for the insurance through his former employer, he pays his $86.46 monthly share directly to the insurer for the benefit of the children. However, because William makes the entire payment, he also ends up paying Shirley's $44.54 monthly share. To make up for this situation, SDCL 25–7–6.16 requires that William either be reimbursed for Shirley's $44.54 monthly share or receive credit against his monthly child support obligation for that amount.

Based upon the above analysis, the child support award in this case must be reversed and the child support issue remanded to the trial court to either require the appropriate reimbursement for the cost of the health insurance or the proper credit against William's monthly child support obligation. Given William's minimal monthly support obligation of $9, both a credit and partial reimbursement may be required to make up for Shirley's entire share of the cost of the health insurance.

## ISSUE FIVE

DID THE TRIAL COURT ABUSE ITS DISCRETION IN FAILING TO INCORPORATE THE VISITATION SCHEDULE AGREED TO BY THE PARTIES IN ITS JUDGMENT AND DECREE OF DIVORCE?

In its judgment and decree of divorce, the trial court ordered, "that [William] shall have

reasonable rights of visitation [with the two minor children] based upon reasonable notice and circumstances." William contends this order violates the following stipulation on visitation made during trial:

[William's Counsel]: Your Honor, that's basically correct. My understanding was, though, that it was agreed that visitation rights will be alternating weekends from 6 p.m. Friday until 6 p.m. Sunday and alternating major holidays and a period of six weeks in the summer, but the judge will decide whether or not the visitation rights will be subject to approval of the children. Basically, the plaintiff would like some type of clause in there giving the children—that these rights are subject to agreement of the children.

        *      *      *      *      *      *

[Shirley's Counsel]: ... These are not three and four year olds. Basically, it resolves [sic] around their activities, and I'm hopeful that the parties themselves— and I've discussed this with my client as well as provided my client with the pamphlet that's put out in terms of visitation— but I think as the divorce goes on or as the—as the divorce goes on in life, the parties are going to have to work around the children's lives more than their own. But as [William's counsel] stated, I think that's essentially correct.

■ In *Radigan*, 465 N.W.2d at 484–85, this court upheld the trial court's rejection of a property settlement and child custody agreement based upon the rule that:

An agreement between the parties on any of these matters is one relevant factor for the court's consideration, but such an agreement does not control the court's exercise of its discretion in light of all relevant factors. The trial court's determinations will not be disturbed on appeal unless the court has abused its discretion by reaching a result 'clearly against[ ] reason and evidence.' (citations omitted).

" '[t]he right of visitation derives from the right of custody and is controlled by the same legal principles.' " *Cooper v. Merkel*, 470 N.W.2d 253, 255 (S.D.1991). Thus, just as the trial court had the discretion to reject

the child custody agreement in *Radigan*, so did the trial court have discretion to reject the visitation agreement in the instant case.

A review of the visitation stipulation itself shows that Shirley had some reservations regarding the fact that the children might not want the frequent and extended visitations that William was seeking. As Shirley's counsel pointed out, the children are not three and four year olds and Shirley testified during trial to their active participation in school activities and various odd jobs. Based upon these considerations, we hold that the trial court did not abuse its discretion in rejecting the narrow visitation agreement of the parties and utilizing broader language in its judgment that would afford greater flexibility in the visitation arrangements.

## APPELLATE ATTORNEY FEES

Both parties have filed motions for an award of appellate attorney fees, William in the amount of $1,855.30 and Shirley in the amount of $1,400. Both motions are accompanied by itemized statements of costs incurred and legal services rendered as required by *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985).

■ Factors to be considered in awarding a party attorney fees on appeal are outlined *Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981):

In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

Based upon our application of these factors, we award neither party appellate attorney fees and direct that each party bear the cost of their own attorney fees for this appeal.

Affirmed in part, reversed and remanded in part.

MILLER, C.J., and AMUNDSON, J., concur.

HENDERSON, J., concurs specially.

SABERS, J., concurs in part and dissents in part.

HENDERSON, Justice (specially concurring).

Had the trial court's order prevailed, William would have been required to pay two insurance premiums—one through his employer and an additional $131.00 per month to Shirley earmarked for insurance. As Shirley and the children are fully covered under the first policy, paying a second premium would only constitute waste. Notably, the dissent side-stepped this arithmetic problem. Therefore, the trial court abused its discretion. *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981).

William receives $1,680.00 per month in disability payments because he suffered an injury to his spine "which totally incapacitate[d] [him] from working at any occupation which brings him an income[.]" SDCL 62–4–6. *See also* SDCL 28–1–59; SDCL 62–4–7. Under these statutes, if he brings in an income, he loses disability payments. The reason behind these benefits is to provide an income where he is physically unable to do so. It is comforting that, despite his physical incapacitation, he is able to enjoy life, rather than remain lethargic.

In *Grunewaldt v. Bisson,* 494 N.W.2d 193, 196–97 (S.D.1992), I specially wrote to say that this Court was "tampering with a modification before the findings of fact had been made." Such is not the situation here. Essentially, the trial court duplicated a form of support, thus causing William to unnecessarily double his insurance payments. We remand simply to correct this error.

It is necessary to address one other point. Citing magazine articles entitled "Deadbeat Dads" and "Battered Women—Why do they stay?" serves only to incite and skew the public's view of the facts in this case. Shirley has not alleged that she is not receiving her monthly checks and insurance coverage.

Shirley has never maintained that she is a battered woman. Deadbeat dad? Battered woman? Not so. The evidence in the record, plus 40 extensive single-spaced Findings of Fact, does not support these two conclusions. The dissent's "authorities" may be 100% accurate, but are completely misplaced here as they insinuate and illustrate a group of men to which William Schwab does not belong. Judicial function cannot operate in a factual vacuum, for, were it to do so, it would contain the antinomy of reason and fiat. Law must be considered as an application of reason to the governing of human affairs. We must apply legal precepts so that the Bench and Bar may determine our reasoning as to why a case has been decided as it has. It is difficult to apply magazine articles as a reasoned precedent.

Finally, Shirley does not claim that $700.00 per month child support is inadequate; nor does she complain that William should contribute more than 66% of the cost. Rather, she and the dissent are incensed by the fact that William has an "easier" method of making his contribution, if one is to label "total disability" as "easier." By our decision, Shirley's and William's contributions per month remain at $238.00 and $462.00, respectively.

SABERS, Justice (concurring in part, dissenting in part).

The trial court should deviate from the guidelines as provided by SDCL 25–7–6.10(1) * because these calculations work a financial hardship on Shirley and the children. *Grunewaldt v. Bisson,* 494 N.W.2d 193, 196 (S.D.1992). As this court stated in *Grunewaldt,* "father's receipt of the Social Security Disability Benefits on behalf of the children may appropriately be taken into consideration by the trial court as a factor for deviation from the guidelines. Any such deviation, however, must be based on entry of the necessary findings of fact and conclusions of law showing the basis for a finding of an inequity which works a financial hardship on mother." *Id.* (citation omitted); *but cf.*

---

* SDCL 25–7–6.10(1) provides in part:

Deviation from the schedule in § 25–7–6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:

(1) The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent[.]

*Grunewaldt,* 494 N.W.2d at 196–97, Henderson, J., concurring in part, dissenting in part (court should not dictate which laws are to be used in deviating).

The contribution of social security to the income of William amounts to a windfall when compared to the financial hardship incurred by Shirley and the two children.

| | |
|---|---|
| William's Disability Benefits<br>($1,227.00 paid to William and $453.00 paid<br>directly to Shirley for the benefit of the children) | $ 1,680.00/mo |
| Shirley's Income | + 874.00/mo |
| Combined Income | $ 2,554.00/mo |
| Combined Child Support Obligation<br>(See SDCL 25-7-6.2) | $ 700.00/mo |
| William's Obligation (66% of $700.00)<br>Credit for social security benefits<br>paid directly to Shirley | ·$ 462.00/mo<br>– 453.00/mo |
| William's Child Support Payment | $ 9.00/mo |
| Shirley's Obligation (34% of $700.00) | $ 238.00/mo |

### William's Income

| | |
|---|---|
| Disability Benefits | $ 1,680.00/mo |
| Child Support Obligation (66% of $700.00 = $462.00/mo)<br>Social Security Benefits<br>Child Support Payment | <br>– 453.00/mo<br>– 9.00/mo |
| Disposable Income | $ 1,218.00/mo |

### Shirley's Income

| | |
|---|---|
| Income from Cleaning | $ 874.00/mo |
| Child Support Obligation (34% of $700.00) | – 238.00/mo |
| Disposable Income | $ 636.00/mo |

### Children's Support

| | |
|---|---|
| William's Social Security Benefits | $ 453.00/mo |
| William's Child Support Payment | + 9.00/mo |
| Shirley's Child Support Payment | + 238.00/mo |
| Total child support for two children | $ 700.00/mo |

Under the majority's calculations, William retains $1,218.00 per month as disposable income while Shirley and the two children attempt to exist on $1,336.00 or $445.33 each. Common sense is required.

Why should Shirley and the children each have only $445 per month to live on while William has $1,218 for himself? Is it any wonder that the poorest people in America are divorced mothers and their children? *See* Steven Waldman, *Deadbeat Dads,* Newsweek, May 4, 1992, at 46 (average support award is just $57.59 per week). ("On average, the family income of the mother retain-

ing custody drops 23 percent after divorce or separation[.] Families headed by a mother alone are six times as likely to be poor as those with two parents." *Id.*)

This father's disability permits him to golf, fish, and hunt and the law provides him the wherewithal to do it. In stark contrast, the mother of these two children operates a cleaning service to provide bare sustenance to herself and her children. Should we then be surprised to learn that women and children continue to tolerate incredible physical and mental abuse within the home just to maintain some financial security? *See* Nancy Gibbs, *'Til Death Do Us Part,* Time, Jan. 19, 1993, at 42 (women do not leave abusive situations because it is not a viable option—they have young children and no other way to support them); *see also Battered Women—Why do they stay?,* Psychology Today, May/June, 1992, at 22. (Women stay in physically abusive relationships because they have no place to go and are protecting their children. "[T]here are 1,200 shelters for battered women, and only 5% of them accept women with children. By contrast, there are 3,800 shelters for homeless animals." *Id.*) Apparently, the system, which is being ratified today by the majority, is leaving them without other options.

