Connie Kay NELSON, Plaintiff
and Appellee,

v.

Jerome Scott NELSON, Defendant
and Appellant.

No. 16650.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1990.

Decided April 11, 1990.

Jay M. Leibel of Ericsson, Ericsson & Leibel, Madison, for plaintiff and appellee.

Thomas L. Fiegen and T.F. Martin of McCann, Martin & McCann, Brookings, for defendant and appellant.

MORGAN, Justice.

Jerome Scott Nelson (Jerome) appeals from a judgment and decree of divorce entered on January 20, 1989, granting such divorce to Jerome and Connie Kay Nelson (Connie). We affirm.

Jerome and Connie were married on August 23, 1975. Three children were born during the marriage: Laura (dob Nov. 29, 1977); Adam (dob Jan. 19, 1981); and Aaron (dob June 2, 1982). Adam has a serious ongoing medical problem (a cyst on the brain) which requires constant medication, observation, and intermittent hospitalization. Because of this disability, Adam receives $299 per month from the Social Security Administration as a Supplemental Security Income Disability (SSID) payment.

By stipulation between the parties, a divorce was granted on the grounds of irreconcilable differences. Both parties agreed that Connie would have custody of the minor children, with reasonable visitation rights given to Jerome.

Jerome, who is thirty-two years of age, was employed by his father on his father's farm. He was paid a net monthly wage of $591.92, plus the use of his father's equipment for use on his own farming operation. Jerome testified that his father only took a portion of the social security tax out of his monthly wage. He did not offer a figure of what the proper tax deduction should have been.

Jerome's farming operation consisted of four hundred acres on a crop/share basis. In 1988, he changed from a crop/share basis to a cash/rent basis, making it difficult to predict his future income.

By Jerome's figures, he made $13,500 in 1988. Additionally, he received a $5,604 ASCS payment. The trial court also found that Jerome padded his business expenses and personal deductions to compute the $13,500 income figure. Further, the trial court found that he sold grain in other people's names to avoid declaring it as income. After reviewing all this evidence, the trial court determined that Jerome made at least $1,578 per month. Connie is employed as a licensed practical nurse, with a net monthly income of $652.90.

The trial court determined that Jerome possessed property worth $8,317.71 and Connie possessed property worth $3,554.11. Further, Connie incurred a debt of $1,145.88 in supporting the minor children during the separation. The trial court or-

dered Jerome to pay Connie $2,964.74. This sum represents half the value of the property Jerome was allowed to retain and half the amount of the debt incurred by Connie in supporting the minor children. The trial court set Jerome's child support payments at $578 per month. The $299 SSID payment received by Adam was not credited to either party's income.

On appeal, Jerome raises three issues:

(1) Whether the trial court abused its discretion in determining the amount of Jerome's income for child support purposes.

(2) Whether the trial court abused its discretion in determining that Jerome's child support should not be reduced because of Adam's SSID payments.

(3) Whether the trial court abused its discretion in dividing the marital property.

We will address each issue separately.

## DETERMINATION OF INCOME FOR CHILD SUPPORT

Before Jerome may prevail on this issue, he must show that the trial court abused its discretion in setting his child support. *Peterson v. Peterson,* 434 N.W.2d 732, 734 (S.D.1989). We do not "determine whether [we] would have made an original like ruling, but whether we think a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." *Havens v. Henning,* 418 N.W.2d 311, 312 (S.D.1988).

Under SDCL 25-7-7 (repealed March 1989) as it then existed, the trial court, pursuant to the statutory guideline, set Jerome's child support at $578 per month because his net income was at least $1,500 per month. Jerome argues that the trial court abused its discretion in arriving at his income figure to set child support. He claims three errors in arriving at the figure: (1) the trial court should have averaged his income for the last five years to arrive at an income figure; (2) the trial court improperly credited an ASCS payment to his income that he was required to

repay; and (3) the trial court improperly credited income to him because of a loaner agreement for farm equipment with his father. We address them in that order.

■ First, Jerome's attempt to read *Studt v. Studt*, 443 N.W.2d 639 (S.D.1989), to require five-year income averaging when a farmer is involved is not well taken. While it is true that the trial court in *Studt* used a five-year averaging method, there is nothing within the opinion that mandates it. More critically, there is nothing within SDCL 25–7–7 that requires income averaging. The statute as it then existed provided:

> For an obligor with net income above one thousand five hundred dollars, the child support obligation shall be established at an appropriate level. However, in no case may the amount of support ordered be less than the amount as provided at the one thousand five hundred dollar net income range.

On a practical level, income averaging would have been an inaccurate means under these facts to arrive at an income figure. The trial court found that Jerome had padded his tax returns and sold grain under other people's names to avoid declaring it as income. Additionally, the loaner agreement on equipment disguised income that he should have received. It would have merely compounded the difficulty the trial court had in arriving at an income figure by using Jerome's inaccurate figures from the previous five years.

■ Second, Jerome claims the trial court erred in including a $5,604 ASCS payment he received for grain, since he was forced to repay the majority of this money. The only evidence at trial that Jerome had to repay this money was Jerome's hearsay testimony. The judge chose not to believe his testimony. Since the trial judge had the opportunity to judge Jerome's credibility and weigh his testimony, we will not disturb his finding on the ASCS payment unless it is clearly errone-

ous. *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980); *Spaulding v. Spaulding*, 278 N.W.2d 639 (S.D.1979); *Isaak v. Isaak*, 278 N.W.2d 445 (S.D.1979); *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). There is plentiful evidence, supplied through Jerome's own admissions on the witness stand, that he was less than truthful in supplying accurate data about his income. We do not find the trial court's finding that he received $5,604 as an ASCS payment was clearly erroneous. *Hanks, supra; Spaulding, supra; Isaak, supra; Holforty, supra.*

■ Third, Jerome claims the trial court overstated his income for child support purposes because it imputed income to him based upon the loaner agreement he had with his father. At trial, no specific dollar value was placed on the use of the machinery. There is no proof that the trial court imputed this income. Jerome now claims that any amount of increase in income he would receive from the use of this income would be offset by the amount it would cost him to rent this same equipment.

Even without "imputing" income because of this loaner agreement, the record justifies the trial court's determination of Jerome's income. By Jerome's figures, he shows an income of $13,500.[1] He admitted in the past that he had sold grain under another person's name and received $750.83. The trial court also found that Jerome had padded his business expenses with personal items. Taking Jerome's admitted income of $13,500 and adding the $5,604 ASCS payment, which the trial court legitimately did with the evidence in front of it, Jerome's income was at least $19,159. This set his monthly income at $1,578. The trial court set Jerome's child support at $578, which was a conservative figure. Since his income exceeded $1,500 per month, the trial court could have set it at a higher figure under the then existing SDCL 25–7–7. We do not find that the trial court abused its discretion in deter-

---

**1.** Jerome claims this figure is too high because it does not reflect a complete tax deduction. Yet, Jerome never supplied evidence of how much more should have been deducted. Faced with this incomplete record, we presume the trial court acted properly. *Isaak, supra; Schurman v. Schurman*, 60 S.D. 489, 245 N.W. 39 (1932).

mining Jerome's income and setting appropriate child support. *Peterson, supra.*

## SOCIAL SECURITY BENEFITS

■ Jerome next contends that the trial court should have considered the social security payments received by Adam as third-party income received by Connie and the family because the $299 Adam receives is deposited into the family checking account. Connie argues that the social security benefits are intended as a supplement for Adam's medical expenses, not a substitute for child support. We agree.

Before we may reverse the trial court on this issue, Jerome must show that the trial court abused its discretion in making its award of child support. *Peterson, supra.*

Jerome predicates his argument solely on SDCL 25-7-6.10:

> Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
> (1) The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent[.]

The trial court found that Adam has a serious ongoing medical condition that requires constant medication, observation, and intermittent hospitalization, and that $299 per month paid by Social Security was for Adam's benefit and should not be used to lower either parent's child support obligation.

Without any precedent to support his position, Jerome argues that the trial court abused its discretion because Connie puts Adam's Social Security payment into her checking account from which she pays bills. This ignores the obvious facts that, regardless of where the check is deposited, it is still accounted for in subsidizing Adam's medical care and treatment.

Faced with the identical question, an Ohio court decided that the income received under SSID payments should not be attributed to a parent's income. In *Oatley v. Oatley,* 57 Ohio App.2d 226, 387 N.E.2d 245, 246 (1977), the court explained why these payments should not be considered income to the parent.

The supplemental income payments are intended to insure a minimum level of income for persons who are over age 65, or blind, or disabled, who do not have sufficient income and resources to maintain a standard of living at the established federal minimum income level. Title 42, Section 1381, U.S. Code; 20 C.F.R., Section 416.110. The amount of supplemental income an eligible individual will receive is based on his income and resources. Title 42, Section 1381a, U.S. Code. In calculating an individual's income, if the individual is a child the support he receives from an absent parent is to be considered. Title 42, Section 1382a(b)(9), U.S. Code. There is a redetermination of eligibility and the amount of benefits at frequent intervals. Title 42, Section 1382(c)(1); 20 C.F.R., Section 416.222. The supplemental security income payments are intended to supplement other income, not substitute, for it. The amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa.

*See generally Anderson v. Powell,* 235 Ga. 738, 221 S.E.2d 565 (1975) (parent's income not credited with supplemental security income payment); *Thompson v. Thompson,* 205 Kan. 630, 470 P.2d 787 (1970) (contributions from governmental agencies will not diminish parent's obligation to furnish child support).

■ Jerome's argument that his child support should be tied to the amount of SSID payments ignores the mechanics of the Social Security system. The trial court should not set child support payments based on SSID payments, since under Social Security regulations, SSID payments are based on the parent's support payments, and are raised or lowered by the amount of the parent's support. These payments are paid to provide supplemental

income to cover a disability, not as a substitute for child support.

Since we agree with *Oatley's* reasoning, we hold that the trial court did not abuse its discretion in not granting a deviation from the child support schedule, since the income is provided to Adam, not the parent. *Oatley, supra;* SDCL 25–7–6.10.

## DIVISION OF PROPERTY

The trial court has broad discretion in making a division of property and we will not disturb that decision unless it clearly appears the trial court abused its discretion. *Moser v. Moser,* 422 N.W.2d 594, 596 (S.D.1988); *Fait v. Fait,* 345 N.W.2d 872 (S.D.1984). The valuation set by the trial court must be within the range of evidence before it. *Moser, supra.* Factors to be considered in dividing marital property are:

(1) The duration of the marriage;

(2) The value of the property of each of the parties;

(3) The ages of the parties, their health and competency to earn a living; and

(4) The contributions of each of the parties to the accumulation of the marital property.

*Moser, supra; Storm v. Storm,* 400 N.W.2d 457 (S.D.1987); *O'Connell v. O'Connell,* 340 N.W.2d 700 (S.D.1983).

■ Jerome contends the trial court erred by overvaluing items in his possession, undervaluing items in Connie's possession and exceeding the parties' range of value on two items.[2] Connie contends that the overall value of marital property was within the range of figures supplied by both parties and is therefore not an abuse of discretion. We agree.

■ First, the trial court is not required to accept either party's proposed valuation. *Baltzer v. Baltzer,* 422 N.W.2d 584, 586 (S.D.1988). Jerome does not con-

tend any of the values were wrong, only that on thirty-four items of property, the trial court accepted Connie's value more often than his. We will not disturb the trial court's valuation absent a showing that an item was overlooked or valuation was clearly erroneous. *Herrboldt v. Herrboldt,* 303 N.W.2d 571, 572 (S.D.1981). The trial court had ample opportunity to observe the parties' truthfulness and concluded that Jerome was being less than truthful with the court about his finances. The trial court could properly reject his valuation figures without being prejudiced. Moreover, Jerome's claim that the trial court accepted Connie's valuation for every item she kept is not true. On both a queen-size bed and a vacuum cleaner, the trial court used figures much lower than Connie's. [bed: Connie's figure—$75, Jerome's—$300, Judge's—$40; vacuum: Connie's—$250, Jerome's—$400, Judge's—$150]

■ Second, contrary to Jerome's argument, our *Moser* decision does not stand for the proposition that *every* item of personal property must be within the range of evidence on that item.[3] *Moser* addresses itself to the requirement that totality of value of all items of property within a category must "be within the range of evidence before the court." *Id.* at 596. Here, the trial court's valuation for all personal property retained by the parties is within the range of figures supplied by both parties.

Personal Property Retained by Connie

| Connie's Value | Jerome's Value | Judge's Value |
|---|---|---|
| $3,469.11 | $4,994.11 | $3,884.11 |

Personal Property Retained by Jerome

| | | |
|---|---|---|
| $8,865.20 | $6,828.20 | $8,317.70 |

Though the trial court's total figures differ from the parties', they are within the range of figures provided by the parties. Therefore, we do not find the trial court abused

---

2. No testimony, other than the opinions of the parties, was submitted as to the value of items of personal property. *Hanks, supra,* makes clear that absent hard evidence by the parties, the trial court's valuation will not be said to be in error if within the proper range of values.

3. The items in question were as follows:

| | Connie | Jerome | Judge |
|---|---|---|---|
| Queen size bed | $ 75.00 | $300.00 | $ 40.00 |
| Vacuum | 250.00 | 400.00 | 150.00 |
| Tractor | 1,250.00 | 700.00 | 1,400.00 |
| Guns | 650.00 | 633.00 | 655.00 |

its discretion in the division of marital property. *Moser, supra.*

Affirmed.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

There is but one facet of this opinion which causes me to concur in result. In my past writings, I have taken the position that minimum statutory guidelines should not turn a judge into a robot nor an automaton. *Feltman v. Feltman,* 434 N.W.2d 590 (S.D.1989); *Donohue v. Getman,* 432 N.W.2d 281, 283 (S.D.1988) (Henderson, J., specially concurring); *Peterson v. Peterson,* 434 N.W.2d 732, 739 (S.D.1989) (Henderson, J., concurring in part and concurring in result in part). We need an independent judiciary, infusing judgment into cases and not to be bound by the dictates of Washington, D.C. bureaucrats who would strip us of our experience and brain power. Therefore, language in this opinion is conceptually unpalatable to those previous writings. Here, the trial judge did not act as a robot or an automaton but actually set the child support obligation at an amount less than the then-existing statutory guideline. In other words, the trial court exercised its discretion based upon Connie's need for child support and Jerome's financial ability to pay. Findings of Fact VII, IX, X, XI, XII, XIII, and XIV display the trial judge's independent exercise of judgment. In fact, these Findings reflect that the trial judge concluded that

Jerome's "monthly net income is *at least* $1,578.80." His conclusion concerning the child support obligation for three (3) children was "[it] shall be established in the sum of $578.00 per month ..." This is expressed via Conclusions of Law VII and VIII. So, I would conclude that this trial judge did not appear to be "obliged" to be a robot or an automaton.

Is the battle for trial judges to finally engineer their minds—with a degree of independence—finally at end? Note to those domestic practitioners and readers of the fine print: A 1989 amendment, by the South Dakota State Legislature SDCL 25–7–6.10 expresses:

Deviation from the schedule in SDCL 25–7–6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors.

(2) Any financial condition of either parent which would make application of the schedule inequitable;

Ah, the Lady of Equity is back at our door.* "Oh, she doth teach the torches to burn bright; it seems she hangs upon the cheek of night like a rich jewel in an Ethiop's ear."

William Shakespeare, in Sonnets CVI, Romeo and Juliet I.v.

She is imbued with beauty and needs a tender judicial application.

It is noted, in the current opinion that the phrase "abused its discretion" is mentioned four times under the procedural history, issues, and child support discussion. The same phrase is mentioned three times under the "social security benefits" discus-

---

* The National Law Journal, February 5, 1990, carries a feature on Mandatory Child Support Guidelines, pg. 1. In same, the second sentence thereof expresses:

But, judges and lawyers are decrying what they see as separation of powers violations by the drafters of such guidelines.

This article is a national expose on Mandatory Child Support guidelines. Therein, the dissent, by this writer in *Feltman* is quoted (only as part of the expose and not, tacitly, with approval or disapproval). A 24–page opinion, Fitzgerald v. Fitzgerald (87–1259) written by Chief Judge Judith W. Rogers of the District of Columbia Court of Appeals, overturned the District's

guidelines. Per the clerk's office, this case has been "reopened" and there is no official cite as yet. In said decision, she expressed "... numeric formulae make it difficult to ascertain what assumptions are being made." With respect to attempting (by a litigant) to argue against application of the guidelines, Chief Justice Rogers wrote that the litigant "... faces a monumental obstacle in attempting to demonstrate a case is 'exceptional' without knowing what 'unexceptional' is." Has South Dakota, I pose, eradicated a constitutional challenge by the above-mentioned amendment which now, apparently re-inculcates the power of discretion of a trial judge in South Dakota?

sion. On issue three, the same phrase is used twice.