**Martin R. JOHNSON, Plaintiff and Appellant,**

**v.**

**Sherryel G. JOHNSON, Defendant and Appellee.**

**No. 17115.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1990.

Decided April 17, 1991.

Craig E. Smith of Neumayr & Smith, Gettysburg, for plaintiff and appellant.

Jarvis Brown, Faulkton, for defendant and appellee.

SABERS, Justice.

Martin R. Johnson (father) appeals an order modifying his monthly child support obligation. We affirm.

## FACTS

Father and Sherryel G. Johnson (mother) lived in Gettysburg, South Dakota, and were divorced in 1985. The divorce decree granted the parties joint custody of their two minor children, actual physical custody to remain with mother. Father was granted reasonable visitation rights and ordered to pay $350 per month in child support for both children.

After the divorce, father moved to California while mother remained in Gettysburg. Mother remarried in October 1987 and she and her husband have since had one child. Father also remarried in November 1987. He and his wife have also had a child and, at the time of the hearing on this matter, were expecting their second child.

In May 1989, mother requested that father's monthly child support obligation be increased from $350 to $600. A hearing was held on her request on January 12, 1990. During the hearing, the parties stipulated that, according to the child support guidelines of SDCL 25–7–6.2, father's monthly child support obligation should be $593.[1] The parties' disagreement at the hearing involved adjustments to, and deviations from, the child support obligation imposed by the guidelines. Father argued that the higher costs of living in California and the financial obligations of supporting a new family justified a deviation from the guidelines. In response, mother presented uncontroverted evidence that the actual monthly costs of raising both children is $638 [2].

After the hearing, the trial court entered its findings of fact, conclusions of law and order. The trial court found: that the new spouse of each party is capable of being employed and contributing significantly to the economic well-being of the respective families; that both parties have significant debt and combined family incomes are barely sufficient or not quite sufficient to meet their respective living expenses; that while application of the child support guidelines might be inconvenient for father, application would not work a financial hardship or be inequitable; and, that neither party's assets are significantly out of proportion to those of the other.

In determining father's support obligation, the trial court agreed that the guidelines required monthly support of $593. However, the trial court noted that mother had introduced uncontroverted evidence that the actual monthly costs of raising both children is $638. Therefore, in setting father's support obligation, the trial court multiplied the $638 figure by father's percentage share of the parties' respective net incomes (i.e., 81%) and fixed father's monthly obligation at $516 rather than the $593 called for by the guidelines. The trial court entered its order accordingly and father appeals.

---

1. Based upon the parties' combined net monthly income of $2,702 their joint monthly support obligation under the guidelines is $732. SDCL 25–7–6.2. Father's proportionate share of the parties' combined income is 81%. 81% of the combined support obligation ($732) yields the $593 figure stipulated to by the parties. SDCL 25–7–6.2.

2. $94 per month *less* than the $732 contemplated by the guidelines. *See* n. 1, *infra.*

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING FATHER'S MONTHLY CHILD SUPPORT OBLIGATION?

■ This court's standard of review in child support cases is whether the trial court abused its discretion in setting the support. *Nelson v. Nelson*, 454 N.W.2d 533 (S.D.1990). In this review, we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion. *Id.* Additionally, we note that this appeal arises out of a request to *modify* a child support obligation. Normally, in these cases, the party seeking modification has the burden of establishing a change in conditions or circumstances since entry of the previous support order. *See, Gross v. Gross*, 355 N.W.2d 4 (S.D.1984). However, the support order sought to be modified in this case was in effect prior to July 1, 1989. SDCL 25-7-6.13 provides: "[a]ll orders for support entered and in effect prior to July 1, 1989 may be modified in accordance with the schedule without requiring a showing of a change in circumstances from the entry of the order." Thus, we review this modification case without imposition of the customary change in circumstances standard.

Father argues that the trial court abused its discretion in modifying his support obligation by refusing to deviate from the guidelines of SDCL 25-7-6.2. Father contends that several of the trial court's findings relative to factors for deviation under SDCL 25-7-6.10 are clearly erroneous. He asserts that these challenged findings are either contrary to, or not supported by, the evidence.[3]

Our standard of review of such contentions is well established:

> Findings of fact will not be disturbed on appeal unless they are clearly erroneous. SDCL 15-6-52(a). In applying the clearly erroneous standard, this court will overturn the findings only when, after a review of all the evidence, the court is left with a definite and firm conviction that a mistake has been made.

*Johnson v. Johnson*, 451 N.W.2d 293, 295 (S.D.1990).

■ 1. Father first asserts that the finding that application of the child support guidelines would not work a financial hardship on him or be inequitable is clearly erroneous. As support for this argument, he references his evidence of monthly expenses exceeding his net monthly income.

Father's list of monthly expenses contained in the record does reflect expenses exceeding his net monthly income. However, the list of expenses contains monthly house payments for two homes father still owns in Gettysburg. While the list reflects the expenses for these two homes, father fails to mention any income from the homes. During the hearing, father admitted the income and expenses for the homes were about a "wash."

As to the balance of the monthly expenses, we observe that it appears father claims sole responsibility for the financial obligations of his current family. This includes large sums of credit card debt, some of which was accumulated by his present wife before their marriage. While father includes all of his present family's financial obligations in his list of expenses, he ignores any reference to his present wife's income. However, during the hearing he

---

**3.** Notwithstanding father's contentions, the trial court *did* deviate from the guidelines in setting his support obligation *in his favor.* The parties stipulated that under the guidelines father's support obligation should be $593 per month. Yet, the trial court set father's monthly support at $516 based upon his share of the actual monthly costs of raising the two children (i.e., $638 × 81%). Thus, the trial court deviated from the guidelines in father's favor by $77 per month.

Although *Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988) states that there may be no deviation from the guidelines unless there is an entry of specific findings to support the deviation, the person adversely affected in this case was the mother and she has not challenged this adverse ruling. This does not provide grounds for reversal to a party, such as father, who was favorably affected by the deviation.

testified that she earned $28,000 in 1988. This, of course, contributed to the household budget and, essentially, cut in half father's share of the monthly expenses contained in his list. Thus, when the income of father's present wife is taken into consideration, the trial court's finding that application of the child support guidelines would not work a financial hardship or be inequitable is not clearly erroneous.

█ 2. Father next challenges the trial court's findings that both parties have significant debt, that their incomes are barely sufficient to meet their living expenses, and that neither party's assets are significantly out of proportion to the other. In essence, father asserts that mother and her husband live a far better lifestyle than he and his wife. In support of his assertions, father alleges that mother and her husband own their own home, take vacations, buy new vehicles, travel and enjoy an active social life. Additionally, father points out that mother does not work to assist in the support of her present family. Finally, father mentions that the cost of living is cheaper in South Dakota than California and that mother and her husband have the benefit of that difference.

In reviewing the evidence regarding father's claim of disparate lifestyles, we note that father's net monthly income is $2,200 while mother's testimony established her husband's net monthly income is $1,742. Additionally, father's wife earned $28,000 in 1988 and is employed part time while mother does not work outside the home and is only imputed to have income equivalent to full time employment at the state minimum wage (i.e., approximately $7,904 per year (SDCL 60–11–3)). SDCL 25–7–6.4. Not only do mother and her husband have a lower income than father and his wife, the couple must care for mother's two children from her marriage to father and their own child. Additionally, mother's husband is required to pay child support for a child from a previous marriage. Mother and her husband own only one vehicle on which they are making payments. They have taken one vacation to Seattle, Washington, since their marriage. Although mother

and her husband have also traveled to Florida, that vacation was a prize won by mother's husband. These facts simply fail to reflect the advantages in lifestyle claimed by father.

As to father's contentions concerning the higher costs of living in California, we note that these are mere conclusory assertions without evidentiary support in the record. However, while recognizing that father's assertions may have merit, we note that father fails to mention that not only was an increase in costs of living occasioned by his move to California but so too was a $7,000 to $8,000 per year increase in his wages for similar work. Thus, while father might suffer the detriment of higher costs of living in California, he also gains the benefit of a higher wage scale to offset those costs.

Based upon the above facts, we find evidentiary support for the trial court's findings that both parties' incomes are barely sufficient to meet living expenses and that neither party's assets are significantly out of proportion to the other. Moreover, we note that in order to uphold deviation from the child support guidelines based on factors relating to the custodial parent (including a new spouse), the custodial parent's financial condition must be *substantially* greater than the noncustodial parent. *Bruning, supra.* Certainly the foregoing facts fail to establish that mother's financial condition is substantially greater than father's, particularly in view of the disparity in incomes between the two families. Accordingly, we cannot state that the trial court's findings in this regard are clearly erroneous or that the trial court abused its discretion in refusing to deviate from the guidelines on this foundation.

█ 3. Finally, father challenges the finding that both parties' spouses are capable of being employed and contributing to the economic well being of the respective families. Father claims this finding is clearly erroneous because of his wife's pregnancy.

Although this argument may have some merit, it cannot be ignored that during the hearing on this matter father testified that

his wife earned $28,000 in 1988. Although father also testified that his wife would not be working full time in the future because of her pregnancy and the birth of their second child, he also testified that his wife continued to work part time. Further, father failed to offer evidence on what his wife's anticipated income as a part time employee would be. Thus, in its findings of fact the trial court utilized the $28,000 figure as her income. Based upon the evidence the trial court had before it, this finding is not clearly erroneous and also supports the finding concerning the employability of spouses.

If father can later establish that his wife's reduction to part time employment has so reduced their income as to make application of the child support guidelines inequitable, he may be entitled to a reduction in child support based upon a deviation from the guidelines. *See* SDCL 25–7–6.-10(2). However, such a finding based upon the evidence before the trial court would be speculative.

### ATTORNEY'S FEES

Both parties have filed motions for appellate attorney's fees. Both motions are accompanied by itemized statements of costs incurred and legal services rendered.
> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

*Studt v. Studt*, 443 N.W.2d 639, 644 (S.D. 1989) (*quoting Senger v. Senger*, 308 N.W.2d 395, 398 (S.D.1981)).

Applying the above factors, we award mother $500 in appellate attorney's fees.

Affirmed.

MILLER, C.J., and WUEST, J., and MORGAN, Retired Justice, concur.

HENDERSON, J., dissents.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (dissenting).

I respectfully dissent. South Dakota case law mandates that there may be no deviation from the child support guidelines unless there is an entry of specific findings regarding the factors in SDCL 25–7–6.10. "[A]ny deviation [from the child support guidelines] must be based on the factors listed in SDCL 25–7–6.10." *Johnson v. Johnson*, 451 N.W.2d 293, 296 (S.D.1990). "[T]here may be no deviation from the guidelines unless there is an entry of specific findings regarding the . . . listed factors." *Bruning v. Jeffries*, 422 N.W.2d 579, 580 (S.D.1988). In the present case, the trial court did, in fact, deviate from the child support guidelines in setting father's support obligation. The parties stipulated that, under the guidelines, father's support obligation should be $593 per month. However, the trial court set his monthly support at $516.

Although the majority opinion acknowledges the current status of our law concerning deviation from child support guidelines, it concludes that the trial court's failure to enter specific findings is not grounds for reversal. It reasons that this error does not provide grounds for reversal to a party who was favorably affected by this deviation, in the present case Father/Appellant.

This type of analysis overlooks the fact that the trial court's lack of specificity provides this Court with no assistance in determining what grounds the trial court used for its *entire* decision. In fact, we simply do not know, as a reviewing court, which of the father's arguments the trial court accepted in support of the deviation it made and which arguments it rejected. We are left in the posture of being precluded from giving meaningful review. This troubles me because we seem to be bypassing precedent, established by this Court, in the two cases I have cited above. A failure to enter special findings does not just impact the trial court's initial deviation, but also, its refusal to deviate further. Therefore, I

would remand this matter so that the trial court would enter specific findings in support of its deviation thereby embracing recent stare decisis. Under my rationale, attorney's fees would not be reached at this time.

Lastly, guidelines or no guidelines, we should not ultimately judge a case upon the guidelines per se. Father is entitled to prevail if he can establish that the trial court abused its discretion in setting the child support. *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D.1990). Accord: *Peterson v. Peterson*, 434 N.W.2d 732, 734 (S.D.1989). My point is the guidelines are not set in stone and an overall assessment should be made of the child support award. It appears to me that this Court has failed to express the ultimate conclusion on whether there was an abuse of discretion or not; rather, it has arrived at a decision by arithmetic and has used the clearly erroneous rule, instead of the abuse of discretion standard again failing to embrace recent and old stare decisis.