Kenneth H. HAWKINS, Appellant,

v.

Jeanine PETERSON, Appellee.

No. 17312.

Supreme Court of South Dakota.

Considered on Briefs March 18, 1991.

Decided July 17, 1991.

GORS, Circuit Judge.

Kenneth Hawkins (father) appeals from a trial court order modifying his monthly child support obligation. We affirm in part, reverse in part and remand.

## FACTS

Father and Jeanine Peterson (mother) were never married. Father's paternity of a minor child born July 26, 1983, was established by judgment in 1984 which also established father's child support obligation at $150 per month. On April 30, 1990, father filed a petition for modification of his child support obligation. The circuit court referred the matter to a referee for a hearing and entry of a report containing findings of fact and conclusions of law.

The referee conducted a hearing on father's petition for modification and filed her report on June 7, 1990. The report recommended modifying father's monthly support obligation to $126 per month and recommended requiring father to pay an additional $55 per month as his proportionate share of health insurance provided by mother bringing father's total obligation to $181 per month. Father filed timely objections [1] to the report. Following a hearing on June 25, 1990, the circuit court entered its order approving and adopting the referee's report on August 8, 1990, fixing father's child support obligation at $181 per month. Father appeals.

## STANDARD OF REVIEW

In reviewing the report of a child support referee, the referee's findings of fact are not to be disturbed unless they are clearly erroneous. A referee's findings may not be overturned unless, upon a review of all of the evidence, the court is left with a definite conviction that a mistake has been made. SDCL 15–6–53(e)(2); *Janke v. Janke*, 467 N.W.2d 494, 497 (S.D.1991). The referee's conclusions of law are freely

Richard Hopewell, Sioux Falls, for appellant.

Jeanine Peterson, pro se.

---

**1.** Father's objections were filed on June 12, 1990, within the ten days allowed by SDCL 25–

7A–22.

reviewable and may be overturned whenever they are incorrect. *Janke, supra.*

■ Mother, who is the appellee, did not file a brief. SDCL 15–26A–80 contains the following:

> If an appellant fails to file his brief within the time provided by § 15–26A–75 or within the time as extended, an appellee may move for dismissal of the appeal. *If an appellee fails to timely file his brief, he will not be heard at oral argument except by permission of the Court.* The clerk may not accept for filing any brief not timely submitted for filing. (emphasis added).

While failure of an appellant to file a brief may be fatal, *Keierleber v. Star Prairie School Dist. No. 27*, 80 S.D. 12, 117 N.W.2d 491 (1962), failure of the appellee to file a brief does not automatically translate to victory for the appellant. Appellant still has the burden of showing that the findings of fact are clearly erroneous or that the conclusions of law are incorrect. In this case, mother was *pro se* throughout the proceedings. Her modest income[2] has little room for attorney fees for an appellate brief. She did not request the modification, object to the referee's recommended order or appeal to this court. This case was submitted without oral argument. Mother should not be penalized beyond the

rule. The appeal will be decided on the merits.

## ISSUE ONE

### WHETHER THE CIRCUIT COURT HELD AN APPROPRIATE HEARING ON FATHER'S OBJECTIONS TO THE REFEREE'S REPORT.

■ There is no transcript of the hearing before the referee[3] or of the hearing in circuit court[4] on father's objections to the referee's report. SDCL 25–7A–22 contains the following provisions relating to judicial review of referee decisions:

> The referee shall file his report with the court and cause copies thereof to be served by mailing to the parties and the secretary. Any party shall have ten days from the date of service of the report in which to file objections to the report. If no objection is filed, the circuit court may thereafter, and without further notice, enter its order. *If any objection is filed, the circuit court shall fix a date for hearing on the report, such hearing to be solely on the record established before the referee.* (emphasis added).

Father waived a transcript by failing to order it.[5] Since review is solely on the record established before the referee, the only review which can take place without a

---

2. The referee found that Mother's income was $1,101.36 per month.

3. The referee made a tape recording of the hearing. Father appeared in person and mother appeared by telephone. Both parties appeared *pro se* at the hearing before the referee.

4. Father and mother appeared *pro se* at the hearing in circuit court on father's objections to the referee's report.

5. SDCL 15–26A–49 contains a provision that failure to order a transcript within the time limit waives the right to a transcript on appeal to this court. In *Kleinsasser v. City of Rapid City*, 440 N.W.2d 734, 738 n. 5 (S.D.1989), this court held that failure to order a transcript within the ten days provided in SDCL 1–26–32.2 was a waiver of the right to have a transcript. The same principle applies to transcription of a hearing before a referee upon the filing of objections to a referee's report. The hearing before the circuit court is solely on the record established before the referee. Contrary to

SDCL 15–6–53(e)(1), under the contract between the referee and the Unified Judicial System, the referee is not obligated to transcribe the tape recording of the hearing unless requested. Neither the circuit court nor the supreme court should be required to listen to audio tapes to determine the state of the evidence. *Stavig v. South Dakota Highway Patrol*, 371 N.W.2d 166, 167 n. 1 (S.D.1985). The parties must order a transcript or face the prospect of having the objections resolved without the testimony taken at the hearing. The party ordering the transcript is obligated for its cost. Under the referee's contract, the referee may charge a person requesting a transcript the same fees charged by a court reporter under SDCL 15–15–7. Due to the abbreviated ninety day turnaround time for completion of referee proceedings, the transcript must be ordered within the ten days provided in SDCL 25–7A–22 for the filing of objections. Failure to order the transcript within the ten day limit waives the right to a transcript.

transcript is a review of that portion of the record which was before the circuit court.[6]

█ Father complains that the hearing in circuit court on his objections to the referee's report was not in accord with SDCL 25–7A–22 or due process. Circuit court proceedings are presumed to be regular absent an affirmative showing to the contrary. *Pearson v. Pearson*, 312 N.W.2d 34, 36 (S.D.1981). Without a transcript of the circuit court hearing, it is impossible to determine how the hearing was conducted. We find no merit to father's contention.

█ Father also complains that the decisions of the referee and the circuit court are a manifest abuse of discretion. Father's general complaint is not supported by the record and we will not reverse in the absence of a clear showing of an abuse of discretion. *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984). However, father's specific claims of error will be addressed.

### ISSUE TWO

WHETHER SOCIAL SECURITY DEPENDENT BENEFITS PAID TO MOTHER ON BEHALF OF A CHILD BECAUSE OF FATHER'S DISABILITY SHOULD BE CREDITED AGAINST FATHER'S CHILD SUPPORT OBLIGATION.

The record contains a copy of Administrative Law Judge Virgil E. Vail's April 24, 1990, decision that father is disabled as defined in the Social Security Act, due to bilateral carpal tunnel syndrome. The referee found that "the minor child will receive approximately $117.00 per month in Social Security disability payments because of father's disability." The referee then concluded as a matter of law that the social security payment to the child should not diminish father's child support obligation, *citing Nelson v. Nelson*, 454 N.W.2d 533 (S.D.1990).

In *Nelson,* one of the children for whom support was being set was disabled by a cyst on the brain. Because of the child's disability, the child received $299 per month from social security as Supplemental Security Income Disability (SSID), *Nelson, supra* at 534. This court held:

> [U]nder Social Security regulations, SSID payments are based on the parent's support payments, and are raised or lowered by the amount of the parent's support. These payments are paid to provide supplemental income to cover a disability, not as a substitute for child support.

*Nelson, supra* at 536–37. In contrast with *Nelson,* mother in this case will receive monthly social security dependent benefits on behalf of the child because father is disabled.

█ Social security dependent benefits are paid on behalf of a child of a disabled parent in recognition of the parent's reduced income resulting from total disability. *Folds v. Lebert,* 420 So.2d 715, 716 (La.App.1982). Under the majority rule,[7] child support may be offset by social security dependent benefits during the period in which the benefits are received. *Newman v. Newman,* 451 N.W.2d 843, 844 (Iowa 1990). Since *Nelson* is inapplicable and since we agree with the majority rule, the referee erred as a matter of law in not allowing credit for the social security payments against father's child support obligation. We reverse and remand for a determination of the amount and application of the credit to father's child support obligation.

### ISSUE THREE

WHETHER THE REFEREE CALCULATED THE CHILD SUPPORT OBLIGATION CORRECTLY.

The referee calculated the total child support obligation of the parties as follows:

---

**6.** The record consists of the circuit court file establishing father's paternity in 1984, Father's petition for modification, his 1989 tax return, his financial statement, payroll information from his former employer, worker's compensation claim and medical records, and documentation concerning his award of social security benefits together with mother's financial statement, a recent pay stub and her 1989 tax return.

**7.** *See* 77 A.L.R.3d 1315, 1328–36.

The parties have a combined net monthly income of $1,587.11. 42% of that sum is the net income of the Petitioner, the non-custodial parent; 58% of that sum is the net income of Respondent. Applying the Child Support Guideline provisions of SDCL 25–7–6.2, the total support obligation indicated is $300.00 per month. The support obligation for the Petitioner, absent consideration of any deviation, would be in the amount of $126.00 per month.

We reverse and remand for a recalculation.[8] The total child support obligation of the parties is to be determined by finding the category on the schedule closest to the combined monthly net income for the parties. The closest category may be slightly lower than the parties' actual combined monthly net income or it may be slightly higher.[9] The nearest scheduled category to the parties' combined monthly net income of $1,587 is $1,600. The indicated child support obligation for one child is $291. The referee's calculation of $300 was incorrect. Father's 42% of the scheduled child support obligation is $122, not $126 as calculated by the referee.

### ISSUE FOUR

WHETHER THE REFEREE SHOULD HAVE DEVIATED FROM THE SCHEDULE ON ACCOUNT OF (1) FATHER'S FINANCIAL CONDITION, (2) THE INCOME TAX DEDUCTION FOR THE CHILD, (3) THE EFFECTS OF CUSTODY AND VISITATION AND (4) FATHER'S SUPPORT OF HIS OTHER CHILDREN.

■ SDCL 25–7–6.10 requires the referee to consider deviation from the schedule if raised by either party and sets forth ten factors. Father claims error because the referee did not deviate from the schedule with respect to the following factors:

(2) Any financial condition of either parent which would make application of the schedule inequitable;

(3) Whether the federal income tax dependent deduction for such minor child is allocated to the benefit of the support obligor or the custodial parent;

\* \* \* \* \* \*

(5) The effect of custody and visitation provisions including whether children share substantial amounts of time with each parent;

\* \* \* \* \* \*

(9) The obligation of either parent to provide for subsequent natural children or stepchildren. However, an existing support order may not be modified solely for this reason; ....

Father raised other deviation factors at the hearing before the referee but these were not briefed and are deemed abandoned. SDCL 15–26A–60(6); *Corbly v. Matheson*, 335 N.W.2d 347, 348 (S.D.1983).

■ With regard to deviation under SDCL 25–7–6.10(2), the referee considered father's statement that he had depleted his savings and had no other income than his social security disability payments. The referee found that there was no basis for deviation. Since there is no transcript of the hearing before the referee, we can only review the other portions of the record.[10] We find nothing in the record to indicate that the referee's finding is clearly erroneous.

■ With regard to deviation under SDCL 25–7–6.10(3), the referee considered that mother is entitled to claim the child as a dependent for income tax purposes. The referee found that there was no basis for deviation. Father will not pay income tax on his social security disability payments. Internal Revenue Code § 86. Therefore, deviation for tax consequences would be inappropriate as a matter of law in this case.

■ With regard to deviation under SDCL 25–7–6.10(5), father briefed this is-

---

8. Referees should round all figures to whole numbers (i.e., $1,587).

9. *See, e.g., Johnson v. Johnson,* 468 N.W.2d 648 n. 1 (S.D.1991).

10. *See* footnote 6, *supra.*

sue; however, the referee's report indicates neither party raised visitation as a factor for deviation at the hearing. We will not consider issues raised for the first time on appeal. *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981).

▬▬▬ With regard to deviation under SDCL 25–7–6.10(9), the referee considered father's request for deviation because he has other children to support. The referee found that there was no basis for deviation based on the minimum level of support that father is required to pay under the guidelines and the fact that his other children will also receive social security dependent benefits. Father has a seventeen year old son and a son who was born about a month after the child for whom support is being set. Since the older son is not a subsequent child, no deviation is appropriate for him under SDCL 25–7–6.10(9).[11] While the younger son is a subsequent child, the only relevant evidence in the record, in the absence of a transcript, is the petition, father's financial statement and father's tax return. Father claimed no support for the subsequent child on the petition or his financial statement and did not claim the child on his 1989 income tax return. There is nothing in the record to indicate that the referee's finding is clearly erroneous.

### ISSUE FIVE

WHETHER THE REFEREE CORRECTLY CALCULATED FATHER'S SHARE OF THE HEALTH INSURANCE PREMIUM FOR THE CHILD.

Mother provides health insurance for the child. The referee recommended that mother continue to provide health insurance and that father pay 42% of the health insurance premium in the amount of $55 per month in addition to his scheduled child support obligation. SDCL 25–7–6.16.

Father complains that the referee calculated his share of the insurance cost incorrectly. The referee multiplied the $131 per month cost of the health insurance by 42%

to arrive at Father's $55 proportionate share. Father suggests that the $131 premium should be divided by two before his proportionate share is derived because the premium is for mother and the child. According to father's calculation, his share would be $28. SDCL 25–7–6.16 provides the following in pertinent part:

> The cost of insurance attributable to the child shall be determined by dividing the out-of-pocket cost of the insurance to the parent by the number of individuals insured thereunder....

The record does not disclose whether the premium covers mother and the child or whether the premium is for the child only. On remand, the referee should determine how many persons are insured under the $131 premium, divide the premium by that number and then determine father's proportionate share.

Affirmed in part, reversed in part, and remanded.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in part and concurs in result in part.

GORS, Circuit Judge, for AMUNDSON, J., disqualified.

HENDERSON, Justice (concurring in part; concurring in result in part).

I concur on standard of review, Issues One, Two and Three. All of these three issues reverse the trial court. However, with reference to Issue Three, the child support formula is so complicated that we have forsaken, at least outwardly, the abuse of discretion test. It has not been mentioned in this opinion. I am suggesting that this test should be recognized rather than abolished by implication. I have never fully abandoned such a rule. Neither has this Court. *Nelson v. Nelson,* 454 N.W.2d 533 (S.D.1990); *Peterson v. Peterson,* 434 N.W.2d 732 (S.D.1989); *Havens v. Henning,* 418 N.W.2d 311 (S.D.1988).

---

11. There was no claim or evidence to allow a deduction from father's monthly gross income for payments made on other support and maintenance orders for the older son under SDCL 25–7–6.7(6).

As regards Issue Four, and particularly a requested deviation under SDCL 25–7–6.10(2), the record causes father to lose this point, i.e., that he had depleted his savings and only had social security disability payments as a resource. As this case is being reversed on the first three grounds, equity would demand that he be permitted to establish if he is totally, financially strapped and only has disability payments to purchase the necessities of life. He is receiving approximately $950 per month so it would superficially appear that he can afford some child support. The question before the house is: How much? Heretofore, my position has been, and continues to be, that if a financial condition of either parent makes the application of the schedule inequitable, that the schedule not be followed blindly. To the extent of my remarks, I concur in result on Issue Four. My concurrence in result is restricted only to SDCL 25–7–6.10(2) and 25–7–6.10(9). Perhaps footnote 11 saves, constitutionally, this statement: "Since the older son [17 years old] is not a subsequent child, no deviation is appropriate for him under SDCL 25–7–6.10(9)." In my opinion, children are children, be they previous children, subsequent children, children of a first or second marriage, or an illegitimate child. *See, Feltman v. Feltman,* 434 N.W.2d 590 (S.D.1989) (Henderson, J., dissenting).[1] They are entitled to equal protection of the law.[2] As I expressed in my writing, they are no less hungry or naked without the support of their father. I questioned as follows: "Should we weep for children of the second marriage at their birth rather than at their death?" *Feltman* at 593. All children are God's children and they are not children of a lesser God. They come into the world without benefit of some hypertechnical statutory guideline, originally dreamed up by bureaucrats in Washington, D.C., who say, in effect, "You accept these guidelines or we give you no money for aid to dependent children."

Although I generally agree with Issue Five, after the reverse and remand on all of the issues, the trial court, in my opinion, might not be able to be a judicial accountant by which he must divide a premium into the number of people to determine the father's proportionate share. A mechanistic approach might not be feasible when the other issues, on child support, are resolved or being resolved. Circuit judges are constitutional officers and should not be tethered to a child support picket. Animals are picketed.

---

1. This section was added, by the State Legislature, becoming effective July 1, 1989. My dissent in *Feltman* was published which reflected that *Feltman* was decided on January 11, 1989. This is not vanity but could be a rather safe conclusion: This section was added due to the verbiage in my dissent or the substance of my constitutional concerns.

2. "We hold these truths to be self-evident: that *all men are created equal* ..." Declaration of Independence. Article 14, United States Constitution: "No *state* shall make or enforce *any* law which shall *abridge* the privileges or immunities of citizens of the United States" ... (If I'm a child of a 1st, 2nd, or 3rd marriage, I have a right to say "you're my daddy"—"you should feed me"). Same Article 14 states: "... Nor deny to *any* person within its jurisdiction the *equal protection* of the laws." Powerful medicine, my legal brothers.