**Roberta Jean EARLEY, Plaintiff
and Appellant,**

**v.**

**George William EARLEY, Defendant
and Appellee.**

**Nos. 17472, 17485.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1992.

Decided April 29, 1992.

Roberta Jean Earley, pro se.

Daniel L. Pahlke, Rapid City, for defendant and appellee.

SABERS, Justice.

Mother appeals modification of child support and denial of income tax exemptions. Father cross-appeals from retroactive modification of child support.

## FACTS

George Earley (Father) and Roberta Earley (Mother) were married July 23, 1967. They had four children: Annelise, born June 11, 1972; Daphne, born April 9, 1974; Aaron, born May 5, 1976; and Amy, born October 23, 1980. Father and Mother were divorced in 1983. Mother was awarded custody of the children.

The 1983 divorce decree provided:

As and for family maintenance and support, [Father] shall pay to [Mother] the sum of . . . $800.00 per month for a period of two years from the date hereof. Thereafter, the family maintenance and support shall be reduced to . . . $600.00 per month. When each minor child reaches the age of emancipation, becomes married or deceased, the family maintenance and support shall be decreased by a sum of . . . $150.00. During any prolonged visitation time by the children of . . . 30 days or more, the family maintenance and support shall be reduced by . . . $150.00 per month per child.

This decree also provided that Father would be allowed to have all four children as income tax exemptions as long as he continued to make support payments.

Mother and the four children moved to Colorado in 1984. In 1988, the court deferred all custody and visitation matters to Colorado as the home state of the children but retained personal and subject matter jurisdiction over child support matters and ordered that:

[C]ommencing the first day of September, 1988, the [Father] shall pay to [Mother] the sum of $750.00 per month as and for family support and mainte-nance with no abatement for visitation purposes or other purposes, such payments to be made through the Pennington County Clerk of Courts.

The court also split the dependency exemptions between Father and Mother by providing Mother the exemptions for Amy and Annelise. In 1989, Mother obtained a judgment against Father for $899 in past due support.

On June 9, 1990, Annelise became eighteen years old after completing high school. As a result, Father reduced his child support payments by one-fourth in July 1990. In late December, 1990, Mother filed motions requesting: application of Colorado law to child support, modification of child support, all tax exemptions, and an order of contempt for Father's reduction of child support.

The court concluded that South Dakota law applied, that Annelise became emancipated on June 9, 1990, and that Father owed no further duty of child support for Annelise as of that date. The court found that Mother's net monthly income was $2,150 and Father's net monthly income was $3,070, for a total of $5,220; and that there was adequate support of the three children at the guideline amount for $4,000 total net income. The court set the child support obligation at $1,236 pursuant to SDCL 25–7–6.2, and apportioned Father's share at $771,[1] based on the total net monthly income attributable to him of 58.-8%. As a result, Father's monthly support obligation actually increased despite the reduction for Annelise. The court made this modification retroactive to July 1, 1990, and determined Father's support arrearage to be $1,459.50. The court did not hold Father in contempt of court due to Father's reliance upon legal advice that he owed no duty of support for Annelise after she graduated and turned eighteen.

Mother appeals claiming the court erred in refusing (1) to apply Colorado law to the support obligation for Annelise; (2) to deviate from the child support guidelines (SDCL 25–7–6.2) in determining child support; and, (3) denying her request for all of the health insurance premium of $44.

---

1. This amount includes Father's monthly share

income tax exemptions. On notice of review, Father claims the court erred in retroactively increasing his child support obligation.

### 1. COLORADO LAW.

■ Mother claims the court erred in refusing to apply Colorado law to the support obligation for Annelise. "Conclusions of law 'are given no deference by this court on appeal' and are reviewed de novo." *Rusch v. Kauker,* 479 N.W.2d 496, 499 (S.D.1991).

■ Mother argues that Annelise is a domiciliary of Colorado, and therefore Colorado law should control the determination of Annelise's age of majority. In Colorado, for the purpose of child support, a child does not become emancipated until age 21. *See In re Marriage of Plummer,* 735 P.2d 165, 166 (Colo.1987); *In re Marriage of Koltay,* 646 P.2d 405, 406 (Colo.App.1982) *aff'd* 667 P.2d 1374 (Colo.1983); *In re Marriage of Weaver,* 571 P.2d 307, 310 (Colo. App.1977). However, South Dakota courts retain jurisdiction over child support matters under SDCL 25–4–45. *Sharp v. Sharp,* 422 N.W.2d 443, 445 (S.D.1988); *Birchfield v. Birchfield,* 417 N.W.2d 891, 894 (S.D.1988). Mother fails to cite any persuasive authority to the contrary. In South Dakota, pursuant to SDCL 25–5–18.1:

> The parents of any child are under a legal duty to support their child in accordance with the provisions of § 25–7–6, until the child attains the age of eighteen, or until the child attains the age of nineteen if he is a full-time student in a secondary school.

In this case, the court specifically retained jurisdiction over all child support matters.[2] Thus, the court did not err in refusing to apply Colorado law to the support obligation for Annelise. Annelise attained the age of eighteen and graduated from high school (secondary school) prior to July 1, 1990. There was no agreement between Mother and Father for Father to provide support for any of the children beyond age eighteen. *See Birchfield,* 417 N.W.2d at 894. Therefore, Father had no legal duty to support Annelise as of July 1, 1990 under SDCL 25–5–18.1.

### 2. GUIDELINES.

Mother claims the court erred in refusing to deviate from the child support guidelines in SDCL 25–7–6.2. "This Court will not disturb an award of child support unless it clearly appears the trial court abused its discretion." *Brooks v. Brooks,* 470 N.W.2d 827, 830 (S.D.1991); *Johnson v. Johnson,* 468 N.W.2d 648, 650 (S.D.1991); *Donohue v. Getman,* 432 N.W.2d 281, 282 (S.D.1988).

Mother's request for modification is controlled by SDCL 25–7–6.9, which states:

> For a combined net income above the schedule in § 25–7–6.2, the child support obligation shall be established at an appropriate level, taking into account the actual needs and standard of living of the child.

As noted above, the combined net income of Father and Mother totaled approximately $5,220–$1,220 above the highest income level in the guidelines. Mother argues that the court should have mathematically extrapolated from the guidelines in setting Father's monthly support obligation. Under her calculations, Father's total child support obligation should exceed $1,012 per month, an increase of $241. Extrapolating from the guidelines for $5,200 total net income provides a support obligation for three children of approximately $1,487. Father's 58.8% share of this amount, approximately $874, together with $44 for insurance, would be $918. Our figure exceeds the amount set by the court by only $147.

■ The issue here is whether the court abused its discretion by failing to mathematically extrapolate from the guidelines. Under SDCL 25–7–6.9, the court must take into account the actual needs and standard of living of the children. *Jones v. Jones,*

---

2. The court deferred jurisdiction to Colorado over all custody and visitation matters pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), SDCL ch. 26–5A. However, the UCCJA does not control decisions relating to child support. SDCL 26–5A–2(2).

472 N.W.2d 782, 785 n. 2 (S.D.1991). *Jones* held that the trial court did not abuse its discretion by mathematically calculating child support above the maximum guidelines even without entering specific findings as to the needs of the children and their standard of living. However, proof of actual needs and standard of living of the children existed. *Id.* at 785; *see also, Peterson v. Peterson,* 434 N.W.2d 732, 738 (S.D.1989); *Havens v. Henning,* 418 N.W.2d 311, 313 (S.D.1988).

The court specifically found that the guideline amount for $4,000 total net income was a "sufficient amount to provide for the health, welfare and needs of the parties' children." This determination was made after several findings of fact dealing with respective annual gross income, the amounts of income and FICA tax withheld each month, Mother's rental property, Father's retirement plan, the cost of the children's health insurance, other monthly expenses and the allocation of the dependency exemptions for the children. Mother did present evidence of her large monthly expenses. However, at least $400 of these expenses were directly attributable to Annelise. Those expenses were properly excluded as Father has no continuing legal obligation for her under issue 1. After considering these matters, the court set the total child support obligation at the maximum guideline amount for three children. Although the appropriate level of child support may be higher, it does not appear from the record that the trial court abused its discretion considering the proof of actual needs. *Jones,* 472 N.W.2d at 785; *Brooks,* 470 N.W.2d at 830.

## 3. INCOME TAX DEDUCTIONS.

Mother claims the court erred in refusing to reallocate all of the exemptions to her. "[G]enerally, the dependency exemption for children of divorced taxpayers will go to the parent having custody of the child for the greater part of the year." *Struck v. Struck,* 417 N.W.2d 382, 382 (S.D.1987); 26 U.S.C.A. § 152(e)(1) (West 1988 & Supp. 1991). There are three exceptions to this general rule—only one of which is applicable in this case. This exception, § 152(e)(4), states:

(4) **Exception for certain pre–1985 instruments.—**

(A) **In general.**—A child of parents described in paragraph(1) shall be treated as having received over half his support during a calendar year from the noncustodial parent if—

(i) a qualified pre–1985 instrument between the parents applicable to the taxable year beginning in such calendar year provides that the noncustodial parent shall be entitled to any deduction allowable under section 151 for such child, and

(ii) the noncustodial parent provides at least $600 for the support of such child during such calendar year.

.    .    .    .    .

(B) **Qualified pre–1985 instrument.**—For purposes of this paragraph, the term "qualified pre–1985 instrument" means any decree of divorce or separate maintenance or written agreement—

(i) which is executed before January 1, 1985,

(ii) which on such date contains the provision described in subparagraph (A)(i), and

(iii) which is not modified on or after such date in a modification which expressly provides that this paragraph shall not apply to such decree or agreement.

Mother and Father were divorced in 1983. The decree was executed prior to January 1, 1985, and it provides that Father, the "non-custodial" parent, may take the dependency exemptions for all four children. Since then, Father provided "at least $600" for the support of each child during each calendar year. Thus, the provisions of § 152(e)(4)(A) and § 152(e)(4)(B)(i) and (ii) are met. The remaining question is whether the 1988 modification to the 1983 decree constitutes a "modification" under § 152(e)(4)(B)(iii).

In *Davis v. Fair,* 707 S.W.2d 711, 716 (Tex.App.–Eastland 1986), the Texas

Court of Appeals explained § 152(e)(4)(B)(iii):

> Subsection (4)(B)(iii) merely gives a court the power to modify a pre-January 1, 1985, instrument which already contains a provision granting the noncustodial parent the right to any deduction allowable under Section 151 of the Internal Revenue Code. *The purpose of subsection (4)(B)(iii) is to continue the force and effect of pre-amendment decrees which contain an express agreement relating to a noncustodial parent's right to claim the dependency exemption.* Subsection (4)(B)(iii) does not give a court the power to modify a pre-amendment decree which is void of any agreement relating to a dependency exception. Absent an agreement in a pre-amendment decree, the exception provided in subsection (4) of Section 152(e) is not applicable.

(emphasis added). We adopted a similar approach in *Sarver v. Dathe,* 439 N.W.2d 548, 551 (S.D.1989):

> A 'Qualified pre–1985 instrument' is 'any decree of divorce or separate maintenance or written agreement,' executed before January 1, 1985, which expressly allocates a deduction for the child in question to a non-custodial parent who provides at least $600 for support of that child, and which is not later changed in a modification expressly providing that 'this paragraph' (the general rule) shall not apply.

*See also State, Fall River County v. Dryden,* 409 N.W.2d 648, 652 n. 2 (S.D.1987). Therefore, a court may reduce the number of exemptions *already* given to a "non-custodial" parent without destroying a decree's "qualified pre–1985 instrument" status.

■ The court's 1988 division of the exemptions is not a § 152(e)(4)(B)(iii) "modification." Therefore, the modified divorce decree qualifies as a "pre–1985 instrument" under § 152(e)(4). Thus, Father fits the exception and the court did not err in refusing Mother the remaining two exemptions.

## 4. RETROACTIVE MODIFICATION.

■ On notice of review, Father claims the court erred in retroactively increasing his child support obligation for the months prior to Mother's petition for modification. Father claims this situation is controlled by SDCL 25–7–7.3, which states in part:

> Any past due support payments are not subject to modification by a court or administrative entity of this state, except those occurring in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the ... obligor[.]

In *Kier v. Kier,* 454 N.W.2d 544, 546 (S.D. 1990), we interpreted this statute to mean:

> Only those payments which accrue while a petition for modification is pending may now be modified, but only from the date that notice of hearing on the petition has been given to the interested parties.

*See Vellinga v. Vellinga,* 442 N.W.2d 472, 474 (S.D.1989). Father was not given notice of hearing of Mother's petition to modify the support obligation until December 29, 1990. Therefore, the court erred by making the support modification retroactive to July 1, 1990. We reverse and remand for a redetermination of Father's support arrearage. If this retroactive increase provided or contributed to the basis for the court's determination on issue 2, that issue should be re-examined in light of this reversal. In view of the above and the factors in *Studt v. Studt,* 443 N.W.2d 639, 644 (S.D.1989), we decline to award any attorney's fees on appeal.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; dissenting in part).

## 1. COLORADO LAW.

I concur on Issue 1 but join in the result only because of the citing of *Rusch,* a very recent unreported real estate contract case,

which is obviously inserted to elevate the importance of the author's writing in *Rusch*, a 3–2 decision. The majority opinion has an inapposite scope of review; application of Colorado law is a matter of explicit application of South Dakota statute and settled law in this jurisdiction. The *Rusch* cite does not fit the facts of this case. Rather, reliance may be placed upon a domestic relations case, *Sharp v. Sharp*, 422 N.W.2d 443, 447 (S.D.1988).

## 2. GUIDELINES.

On Issue 2, I agree that the trial court did not abuse its discretion in setting child support. A long dissertation on child support guidelines enters the arena of arithmetic and computerizes child support with total mathematical calculation. I have long held the belief that the child support guidelines are not totally obligatory and must not turn our trial judges into legal automatons, where their only duty is to punch the legislative button. Witness, SDCL 25–7–6.10(2), which expresses:

> Deviation from the schedule in § 25–7–6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
>
> \*  \*  \*  \*  \*  \*
>
> (2) Any financial condition of either parent which would make application of the schedule inequitable;

In South Dakota, a trial judge sits in both "at law" and "equity" cases. In a domestic relations case like this, our trial judges are sitting in "equity." They are state constitutional officers and have the right and the duty to render equity. They do not have to be a legislative lackey. The politicians in our capitol get together and pass laws because of pressure groups. Our trial judges should not be mentally castrated. Nor equitably castrated. They are clothed with the power to decide cases in equity and not to have equity imposed in each case, as the politicians and pressure groups would have them do. After this author's many writings on this subject, the Legislature responded to engraft a legislative power upon judges sitting in equity

who were already clothed with the power the Legislature saw fit to graciously bestow upon them.

The standard of review on child support awards is whether the trial court abused its discretion in setting such award. *State of Kansas, ex rel. John W. Adams v. Donice Faye Adams*, 455 N.W.2d 227 (S.D.1990); *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977).

> Regardless of the child support guidelines, SDCL 25–7–6.2, the reviewing court is to determine whether there is an abuse of discretion on the part of the trial court in setting child support obligations. The guidelines are not set in stone and an overall assessment should be made of the child support award.

*Johnson v. Johnson*, 468 N.W.2d 648, 653 (S.D.1991) (Henderson, J. dissenting). Authority which I rely upon in stating this proposition is *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D.1990) and *Peterson v. Peterson*, 434 N.W.2d 732, 734 (S.D.1989). When a court is required to exercise discretion in setting a child support obligation, the court must consider the reasonable needs of the child and the obligor's ability to pay. *Havens v. Henning*, 418 N.W.2d 311 (S.D.1988). Trial judges have had this power for decade upon decade; the judges and our courts should not have to be bounded by mathematical formulae. Mechanics? No. Architects? Yes. Schedules and guidelines erase the human factor and, often, good common sense.

## 3. INCOME TAX DEDUCTIONS.

I concur.

## 4. RETROACTIVE MODIFICATION.

I concur.

## 5. ATTORNEY'S FEES.

I dissent on the non-award of attorney's fees. Counsel for appellee has submitted an itemized statement reflecting, under *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D. 1985) a request for $2,856.70. Essentially, father wins this appeal and he is entitled to a reasonable award. Based upon my read-

ing of the verification of attorney's fees and sales tax on services plus the fact that there are no novel legal questions herein and rather short briefs, I would award appellee's counsel $1,500.00 in attorney's fees, sales tax, plus all taxable costs of this appeal as determined by the Clerk of the Supreme Court. It is unconscionable to deny appellee a single penny for his lawyer's work product, not to mention a good result.